# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**PHILIP BENHAM**                                                                              **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO.: 3:19cv911HTW-LRA**

**CITY OF JACKSON, MISSISSIPPI,**
**and JAMES E. DAVIS, in his official**
**capacity as Chief of Police for Jackson**
**Police Department**                                                                       **DEFENDANT**

---

### SUPPLEMENTAL MEMORANDUM TO DEFENDANT'S RESPONSE
### IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

**COME NOW**, the City of Jackson, Mississippi, and Chief James E. Davis, in his official capacity as Chief of Police for Jackson Police Department, referred to herein collectively as the "City" or "Defendant,"[1] by and through counsel, and submits its Supplemental Memorandum to Defendant's Response in Opposition to Plaintiff's Motion for Preliminary Injunction.  The City files this supplemental briefing pursuant to the Court's April 23, 2020, motion setting which ordered the parties to submit supplemental briefing on Plaintiff's Motion for Preliminary Injunction [4] to address 1) whether Plaintiff possesses standing to bring this lawsuit, and 2) whether this lawsuit is yet ripe.

---

[1] The terms "City" and "Defendant" include Chief James E. Davis, as a lawsuit filed against a City of Jackson employee in his/her official capacity is tantamount to a lawsuit against the City itself.

## SUMMARY OF ARGUMENT

Plaintiff is a resident of North Carolina who has various special interests for which he engages in acts of protest.  He seeks declaratory and injunctive relief against the City related to an ordinance2 enacted by the City Council for the City of Jackson, which limits the obstruction and the creation of chaotic noise around health care facilities within the City so that an individual's access to lawful medical treatments is unimpeded.  Plaintiff challenges the constitutionality of the Ordinance on its face, and as applied, as it relates to anti-abortion speech that he would make, should he visit Jackson in the future to protest at Jackson Women's Health Organization ("JWHO") where abortion procedures are performed.  However, Plaintiff has no ties to the State of Mississippi or the City of Jackson and had no travel plans in place, or that had been canceled, at the time of the filing of Plaintiff's Verified Complaint [1].

The Plaintiff  asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1983, which vests federal courts with jurisdiction over cases or controversies that raise a federal question.  While a challenge to the validity of an ordinance raised under the United States Constitution poses a federal question, Plaintiff's Verified Complaint [1] fails to present a justiciable case or controversy because Plaintiff's claims are not yet ripe for judicial resolution and he lacks standing.  Plaintiff is simply too far removed from the impact of a local ordinance, enacted to address local needs, to assert an injury sufficient to confer standing.  Moreover, the .  Plaintiff alleges a general grievance rather than a personal stake sufficient to invoke federal-court jurisdiction, threatening to open a floodgate of litigation within federal courts that would cripple local governments' ability to carry on necessary day-to-day operations for the safety and welfare of local citizens.

---

[2] City of Jackson, Mississippi, Code of Ordinances ("Jackson Municipal Code") § 86-401, *et seq.*, *An Ordinance of the City of Jackson, Mississippi, Prohibiting Certain Activities Near Health Care Facilities* ("Ordinance").

## LEGAL STANDARD

A Fed. R. Civ. P. 12(b)(1) challenge to subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte.*[3]  Any Fed. R. Civ. P. 12(b)(1) jurisdictional challenge should be considered before addressing the merits of the motion.[4]  The burden of proof lies with the party invoking the court's jurisdiction.[5]  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[6]  Jurisdiction must be established by a preponderance of the evidence.[7]

## ARGUMENT

Plaintiff's Verified Complaint [1] fails to present a justiciable "case or controversy" because Plaintiff's claims are not yet ripe for judicial resolution and the Plaintiff lacks standing. The Declaratory Judgment Act, 28 U.S.C. § 2201, permits a federal court to issue declaratory relief solely "in a case of actual controversy within its jurisdiction."[8]  The Act's restriction on federal jurisdiction extends to the "cases and controversies" limit set forth in Article III of the United States Constitution.[9]  For the federal judiciary, the "case or controversy" requirement defines the very idea of separation of powers upon which the Federal Government was established, as it is "founded in concern about the proper – and properly limited – role of the courts in a democratic society."[10]

---

[3] *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999).
[4] See, *Id.*
[5] *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).
[6] *Id*.
[7] *Wright v. United States*, 82 F.3d 419, 1996 WL 172119 (6th Cir. 1996).
[8] 28 U.S.C. § 2201, *et. seq*.
[9] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560, 112 S. Ct. 2130, 2136 (1992).
[10] *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975).

Several doctrines relating to the Article III case-or-controversy limitation have evolved, such as standing, mootness, ripeness, political question, etc., delineating the fundamental limits on federal judicial power.[11]  All of these doctrines "relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government."[12]

The Fifth Circuit has explained that "[a] controversy, to be justiciable, must be such that it can presently be litigated and decided and **not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop**."[13]  In other words, even actions seeking declaratory judgment must have an actual "case or controversy."[14]

### The Plaintiff Does Not Possess Standing To Bring This Lawsuit

Standing relates to several limitations observed by the federal judiciary, such as prohibiting a litigant from raising another's legal rights, requiring a litigant's complaint to fall within the zone of interests protected by the law invoked, and barring adjudication of generalized grievances more appropriately addressed in the representative branches.[15]  These boundaries are predicated upon the principle that federal courts may exercise power only "in the last resort, and as a necessity[.]"[16]  Thus, if the chain of causation is too weak, if the relief that would result from a favorable ruling is too speculative, or if the injury is too abstract or otherwise not appropriate, standing may not be

[11] *Vander Jagt v. O'Neill*, 226 U.S.App.D.C. 14, 26–27, 699 F.2d 1166, 1178–1179 (1983) (Bork, J., concurring).
[12] *Id.*
[13] *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (citing *Brown & Root, Inc. v. Big Rock Corp.*, 3836 F.2d 662, 665 (5th Cir. 1967) (emphasis added).
[14] *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997).
[15] See, e.g., *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., et al.*, 454 U.S. 464, 474-475, 102 S.Ct. 752, 759–760 (1982); *Lujan*, *supra*, 504 U.S. at 560, 112 S.Ct. at 2136.
[16] *Chicago & Grant Drunk R. Co. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 402 (1892).

4

conferred.   Otherwise the adjudication would be contrary to the justiciability doctrine, which mandates that the judicial process be "consistent with a system of separated powers."[17]

Thus, an inquiry into standing requires an examination of the complaint's allegations to determine whether the *particular* plaintiff is entitled to adjudicate the *particular* claims asserted. It follows that the plaintiff must allege "such a **personal** stake in the outcome of the controversy as to warrant **his** invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."[18]  Meeting the "irreducible constitutional minimum" requirement of standing involves three core elements: (1) the plaintiff has suffered or is about to suffer an "injury in fact" that is concrete and particularized, and actual or imminent; (2) there is a "causal connection between the injury and the conduct" complained of; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[19]

Plaintiff will argue that cases involving a pre-enforcement challenge on the basis of free speech require only that the plaintiff show either a credible threat of prosecution or the statute's chilling effect on free expression.[20]  However, the "injury-in-fact test requires more than simply an injury to a cognizable interest," it also "requires that the party seeking review be himself among the injured."[21]  A court must also look to the substantive issues of the case "to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated."[22] These prudential interests bear on standing in that a plaintiff may only assert his own legal rights and interests and not those of third parties, and his complaint must fall within the "zone of

---

[17] *Flast v. Cohen*, 392 U.S. 83, 97, 88 S.Ct. 1942, 1951 (1968); see also, *Valley Forge*, *supra*, 454 U.S. at 472–473, 102 S.Ct. at 758–759.
[18] *Florida Department of Insurance v. Chase Bank of Texas*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Warth*, *supra*, 442 U.S. at 498-99).
[19] *Lujan*, *supra*, 504 U.S. at 560-561, 112 S. Ct. at 2136.
[20] *See, e.g, Mangual v. Rotger–Sabat*, 317 F.3d 45, 56–57 (1st Cir.2003).
[21] *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972).
[22] *Flast, supra,* 392 U.S. at 102, 88 S.Ct. 1at 1953.

interests" protected by the statute in question.[23]  Intangible interests such as free speech must still be particularized.[24]  Subjective ideological interests - no matter how deeply felt - are not enough to confer standing.[25]  To demonstrate that the increased risk of harm injures the plaintiff's concrete interests, the litigant must establish either its "geographical nexus" to, or actual use of, the site in question.[26]

Plaintiff, as a resident of North Carolina, alleges no ties to Jackson, Mississippi, which is the only location where the Ordinance applies.  Plaintiff draws himself as a "traveling missionary" who would like to, but for the Ordinance, plan a future visit Jackson to "minister" against abortion.[27]  Plaintiff's claim of injury is based solely upon 1) a special interest in the subject of abortion and 2) an alleged desire to visit Jackson at some unidentified time in the future to protest abortion.  This hypothetical future injury does not confer standing because it is not concrete and particularized, and it is not actual or imminent.[28]  Plaintiff has not suffered nor is he about to suffer an "injury in fact" and his alleged injury is entirely conjectural and hypothetical.[29]

Moreover, Plaintiff's anticipated injury is entirely speculative, as his future actions would not violate the Ordinance as alleged, rendering his claim moot.  For example, Plaintiff repeatedly claims that his intended activities include "*conversational* level" communication, and that he

---

[23] *Valley Forge, supra*, 454 U.S. at 474–75, 102 S.Ct. at 759–60 (citations omitted); see also, *Lujan, supra,* 504 U.S. at 578, 112 S.Ct. at 2145–46 (holding that citizen-suit provisions of the Endangered Species Act may not abandon the requirement of injury), and *Sierra Club, supra,* 405 U.S. at 741, 92 S.Ct. at 1369 (holding that an environmental group lacked standing to challenge national park development because it lacked an injury).

[24] *Spokeo, Inc. v. Robins,* 136 S.Ct. 1549, citing *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993).

[25] *Sierra Club v. Morton*, 405 U.S. 727, 729-35, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

[26] *Douglas County,* 48 F.3d 1495, 1501 (stating that the "geographic nexus" test is equated with the "concrete interest" test of *Lujan, supra,* 504 U.S. at 573 n. 8, 112 S.Ct. at 2143 n. 8); *see also, Catron County,* 75 F.3d at 1433.

[27] Verified Complaint [1], pp. 4-6, 18.

[28] To be imminent, an injury must "proceed with a high degree of immediacy" to reduce the chance of deciding a case where no injury ultimately occurs at all. *Lujan, supra*, 504 U.S. at 564, n. 2, 112 S.Ct. at 2130.

[29] *American Forest And Paper Ass'n. v. U.S. EPA*, 137 F.3d 291, at 296 (5th Cir. 1.998).

may "raise his voice if needed for someone to hear his message."[30]  Plaintiff, incorrectly, claims in his Verified Complaint [1] that the Ordinance "prohibits . . . speech with a raised voice" in a health care facility's quiet zone.[31]  Rather, the Ordinance states that "[n]o person shall **shout**"[32] in the area designated as a quiet zone.    "Shouting" is defined as "any **reasonably loud boisterous or raucous shouting** . . . within a quiet zone."[33]  Plaintiff similarly claims that his attempts to have "friendly discussions," while "standing a few feet, a comfortable, conversational distance, away" would violate the buffer and bubble provisions of the Ordinance.[34]  However, the Ordinance's limitation on obstructing entrances and entering another's personal space without consent is **not** inconsistent with one standing a comfortable, conversational distance away for a friendly discussion.

The *only* conduct Plaintiff alleges that he desires to engage in that is prohibited by the Ordinance is the use of amplification devices.   However, the First Amendment guarantees only free speech, not speech amplified by a bullhorn.   Notwithstanding the obvious implication that the use of a bullhorn would be inconsistent with the "respectful" and "winsome" speech Plaintiff proposes, the amplification of speech is not protected and thus cannot be claimed as the basis of injury.

Accordingly, Plaintiff is unable to establish a causal connection between his alleged injury and the City's Ordinance.  In addition, because Plaintiff has failed to even

---

[30] Verified Complaint [1], pp. 5, 7 (claiming that, if a woman drives past Plaintiff and then walks through the parking lot to the facility, he (also at a "conversational level") may "call out . . . with a raised voice, so his message can be heard"); see also, Verified Complaint [1] Exhibit A, *Affidavit of Philip Benham*, p. 3 (Plaintiff, seeking to have a "friendly and consensual conversation with a person visiting an abortion clinic" may "need to be louder than usual to be heard"), p. 5 (based on configuration of an abortion clinic, Plaintiff, to "cover the distance," may "raise [his] voice"), p. 6 (to reach people driving in the parking lot, Plaintiff's only option may be to "raise [his] voice").

[31] Verified Complaint [1], p. 1.

[32] Jackson Municipal Code 86-402, *Definitions* (emphasis added).

[33] Jackson Municipal Code 86-405, *Limitations on Sound* (emphasis added).

[34] See, e.g., Verified Complaint [1], p. 5.

allege concrete plans to protest at JWHO on any particular occasion, a favorable decision is not *likely* to redress his alleged injury, but can only be merely speculative.  Because Plaintiff is unable to allege an injury in fact that is concrete and particularized, or a causal connection between any injury and the Ordinance, he lacks standing to bring his claim.

<u>**This Lawsuit Is Not Yet Ripe For Adjudication**</u>

In order for this Court to entertain Plaintiff's lawsuit, his claims must be ripe for adjudication. The ripeness doctrine arises out of the Article III judicial limitations as well as prudential reasons for declining to exercise jurisdiction.[35] "The basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication from entangling themselves in abstract disagreements."[36]  The Fifth Circuit Court of Appeals has noted how "[a] ripeness inquiry is often required when a party is seeking pre-enforcement review of a law or regulation."[37]

Fifth Circuit precedent has firmly established the principle that "a court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical," and has counseled against "premature adjudication."[38]  The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."[39]  A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.[40]

---

[35] *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008).
[36] *Id*. (citing *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967), internal quotations omitted).
[37] *Id*.
[38] *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003); see also, *LeClerc v. Webb*, 419 F.3d 405, 414 (5th Cir. 2005) (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)).
[39] *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)
[40] *Id*. at 586-87 (internal citations omitted).

An inquiry into the ripeness of Plaintiff's claim is appropriate in this case because Plaintiff is seeking pre-enforcement review of Jackson Municipal Code § 86-401, *et seq*.  As a threshold matter, the claims in the pending action are not ripe for adjudication because the Defendant has yet to enforce the Ordinance against Plaintiff.  As confirmed by his Verified Complaint [1], Plaintiff has not traveled to Jackson to protest abortion, for "fear of sanction and arrest" if he were to engage in his desired speech at JWHO.[41]  Neither has Plaintiff alleged actual enforcement of the Ordinance against others.

Moreover, as discussed above, Plaintiff's hypothetical future actions as alleged would not violate the Ordinance, further compounding the abstract nature of his claims.  Accordingly, even if the Ordinance unlawfully impaired protected speech, it has not yet impaired Plaintiff's speech and it may never impair his speech in the future.  Plaintiff's claim is too far removed, abstract and hypothetical even to claim a "chilling effect" upon his speech.  Plaintiff's contention that the Ordinance is unconstitutional is precisely the type of request for pre-enforcement review that the ripeness doctrine is designed to prevent, even in this free speech context.  Plaintiff's claims remain abstract and hypothetical and the matter before this Court is premature because any injury to the Plaintiff is speculative and may never occur.

## CONCLUSION

By bringing his lawsuit in federal court when there is no genuine case or controversy, Plaintiff casts open the courthouse doors for every person who wields a special interest, and a claim of thwarted travel plans, when their "injury" is no more than a generalized concern shared by all citizens.  These myriad litigants would then brandish the federal judiciary as a coercive power over every municipality that has enacted a local regulation, to address *local* needs, in

[41] Verified Complaint [1], p. 18.

9

potential conflict with his/her special interest.  This misuse of the federal courts not only seeks to violate the separation of powers, but, if permitted, would effectively shut down the normal operation of local governments.  Discovery alone for such an onslaught of litigation would impair government operations, pushing municipalities into *in terrorem* settlements when there exists no live dispute.

Accordingly, the Defendant requests that Plaintiff's Motion for Preliminary Injunction [4] be denied and respectfully submits that Plaintiff's Verified Complaint [1] should be dismissed by the Court for lack of subject matter jurisdiction.

**THIS** the 3rd day of May, 2020.

Respectfully submitted,

**THE CITY OF JACKSON, MISSISSIPPI, and**
**CHIEF JAMES E. DAVIS, IN HIS OFFICIAL CAPACITY,**

By: */s/ Paige Wilkins*
Timothy Howard, MSB # 10687
City Attorney for the City of Jackson
James Anderson, Jr., MSB # 8425
Senior Deputy Attorney
LaShundra Jackson-Winters, MSB # 101143
Deputy City Attorney
J. Paige Wilkins, MSB # 102052
Deputy City Attorney

**OF COUNSEL:**

Timothy Howard, City Attorney
OFFICE OF THE CITY ATTORNEY
Post Office Box 2799
Jackson, MS 39207-2799
601.960.1799 (telephone)
601.960.1756 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I, J. Paige Wilkins, one of the attorneys for the Defendants, do hereby certify that I have

this day delivered a correct and true copy of the foregoing document via ECF to the following:

> Nathan W. Kellum
> Center for Religious Expression
> 699 Oakleaf Office Lane, Suite 107
> Memphis, TN 38117
> Email: nkellum@crelaw.org

So Certified, this the 3rd day of May, 2020.

By: */s/ Paige Wilkins*_____
    J. Paige Wilkins