**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**PHILIP BENHAM**                                                                                   **PLAINTIFF**

**VS.**                                                        **CIVIL ACTION NO.: 3:19cv911HTW-LRA**

**CITY OF JACKSON, MISSISSIPPI,
and JAMES E. DAVIS, in his official
capacity as Chief of Police for Jackson
Police Department**                                                                          **DEFENDANTS**

---

**CITY OF JACKSON DEFENDANTS'
MEMORANDUM OF LAW IN RESPOINSE TO ORDER [38] AND IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

**COME NOW**, the City of Jackson, Mississippi, ("City") and Chief James E. Davis, in his official capacity as Chief of Police for the Jackson Police Department (collectively referred to herein as "City" or "Defendants"[1]), by and through counsel, and file this Memorandum of Law in Response to Order [38] and in Support of Defendants' Motion to Dismiss as Moot [34].

## PROCEDURAL HISTORY

Plaintiff, Philip Benham ("Plaintiff"), commenced this action on December 11, 2019, by filing a Verified Complaint [1], along with a Motion for Preliminary Injunction [4], challenging the constitutionality of City of Jackson Ordinance Section 86-401, *et seq.*, entitled, *An Ordinance of the City of Jackson, Mississippi, Prohibiting Certain Activities*

---

[1] The terms "City of Jackson Defendants" and "Defendants" include Chief James E. Davis, as a lawsuit filed against a City of Jackson employee in his/her official capacity is tantamount to a lawsuit filed against the City itself.

*Near Health Care Facilities* ("the Ordinance"), enacted by the City Council on October 1, 2019. Plaintiff, a North Carolina resident, claimed that the Ordinance prevented him from conveying his views at a health care facility located in the City of Jackson, the Jackson Women's Health Organization ("JWHO"), should he visit Jackson to express his views at JWHO.

Plaintiff's Verified Complaint sought a judgment declaring the Ordinance unconstitutional on its face and as applied, in violation of the First and Fourteenth Amendments.[2] In addition, Plaintiff sought a preliminary and permanent injunction enjoining the application or enforcement of the Ordinance, nominal damages, costs, and attorneys' fees.[3] The Court heard argument on Plaintiff's Motion for Preliminary Injunction on April 24, 2020, requesting supplemental briefing which was submitted by the parties in May 2020. The Court conducted a site visit in July 2020, and conducted a brief teleconference with the parties on August 13, 2020.

On October 20, 2020, the Court issued a text order with an update of the Court's calendar, stating that a written ruling was predicted in a week. On November 6, 2020, the Court's clerk emailed the parties to advise that, due to staff sickness, the projections for various court opinions had been modified, but that the Court would issue a bench or written opinion on November 11, 2020. On November 10, 2020, the Court's clerk emailed the parties, attaching a letter from the Court, which read:

> Attorneys,
>
> As you know it was my intent to have the opinion in this matter filed on tomorrow. I must apologize. When I crafted this schedule, I did not realize that tomorrow is Veterans' Day, a federal holiday on which this court is

---

[2] VC [1], pp. 18-20.
[3] *Id.* at pp. 20-21.

closed.  I was also presiding over a jury trial that I expected to conclude on last Friday.  We just concluded that trial last night.

I would like to set a telephone conference with the attorneys for 4:00 p.m. on Thursday, November 12, to share my conclusions with you.  Instructions for dialing in to the conference are as follows . . ..

Again, my apologies, and I will speak with you on Thursday afternoon.

Judge Henry T. Wingate
United States District Court Judge

## November 12, 2020, Teleconference

On November 12, 2020, the Court held a teleconference with the parties at which time the City anticipated that the Court would, as stated in its letter, "share its conclusions."  This belief was consistent with the Court advising the parties that it was going to issue its opinion in writing but that it wasn't finished, as some cases still needed to be added, and that there was a problem with court reporter arrangements so there would be no record.[4]  Counsel's notes on the teleconference also indicate that the Court would provide excerpts from its opinion, which would be filed as a written opinion, but in the meantime the Court would go forward with sharing its conclusions since the teleconference had already been rescheduled.

The Court noted that the Ordinance contained three primary restrictions – an eight-foot bubble zone around individuals, a fifteen-foot buffer zone at an entrance, and a restriction against shouting/amplification devices; applicable during business hours only.  The Court addressed having subject matter jurisdiction on the basis of a federal cause of action, and noted that subject matter jurisdiction had not been challenged by

---

[4] All references are therefore based on notes taken during, and recollection of, the November 12, 2020, teleconference.

either party.  The Court concluded that the Plaintiff had standing, having announced his intention to travel to Jackson, and that the lawsuit was ripe for adjudication.  The Court then explained the elements it considered regarding preliminary injunctions, including 1) the likelihood that the plaintiff would prevail, 2) whether the plaintiff would suffer irreparable harm if the preliminary injunction was not granted, and 3) whether the injury outweighed the harm.[5]

The Court then discussed some of the elements to be considered when evaluating whether an ordinance can withstand a constitutional challenge.  The Court considered speech to be a protected activity, public sidewalks to be a public forum, and the Ordinance to be content-neutral, noting that the latter indicated which standard of scrutiny should be applied.  The Court noted that the intermediate standard of a narrowly tailored restriction (though not the least restrictive), with alternative channels of communication available, is satisfied if it does not burden more speech than necessary to further the legitimate government interest.

The Court explained that, while courts have allowed each restriction (buffer, noise, and bubble zones) individually, an inquiry similar to the court's in *Brown v. Pittsburgh* (where two restrictions together were found to be too restrictive) had to be conducted by the Court in this case.  The Court stated that it had examined the restrictions and the narrow tailoring, and that the three overlapping restrictions of the Ordinance were not narrowly tailored and would not pass constitutional muster as to the preliminary injunction, but that it did not reach the merits.

---

[5] Counsel for the City occasionally had difficulty understanding the Court's discussion due to a poor audio connection and did not hear the fourth element, though presumes it was whether the defendant would be harmed if the injunction did issue, pursuant to relevant case law.

The Court then had a discussion with Counsel regarding whether the City anticipated requesting an expedited trial, whether it expected to call witnesses, and how much time would be required to get back with the Court with feedback.  The Court scheduled a teleconference for November 23, 2020, for this purpose.  At this time, the City believed that the Court would enter a preliminary injunction at a later date, setting forth the conduct from which the City was enjoined.

**Ordinance Repealed**

On Friday, November 13, 2020, City officials were made aware of the general conclusions shared by the Court at the November 12, 2020, teleconference.  The police department was instructed to discontinue any enforcement of the Ordinance, and all signage relating to the Ordinance was removed the same day.

Also on November 13, 2020, at 10:30 a.m., a notice of a special meeting of the Jackson City Council ("Council") to be held on Monday, November 16, 2020, at 10:00 a.m., listing one item: "Discussion: Potential Litigation," was issued and published, utilizing the normal means by which the City notices all of its public meetings.  The notice was posted globally and transmitted to the media by electronic means, and posted at Jackson City Hall on both the public board and the electronic bulletin board.

On Monday, November 16, 2020, the Council held a duly called special meeting, with the following members present: Aaron Banks, Council President, Ward 6; Charles H. Tillman, Council Vice President, Ward 5; Virgi Lindsay, Council Member, Ward 7; and De'Keither Stamps present via teleconference,[6] Council Member, Ward 4.  The special

---

[6] Pursuant to Section 25-41-5(2) of the Mississippi Code Annotated (1972), as amended ("MCA" or "Mississippi Code").

meeting was called to order at approximately 10:09 a.m..  After being advised by City Attorney Timothy Howard that the noticed item was related to potential and/or current litigation, the Council moved, and properly seconded, to enter closed session to discuss whether it was necessary to go into executive session.[7]  The vote was unanimous based upon the quorum present[8] and the Council Chambers was cleared to excuse anyone not related to the potential and/or current litigation to be discussed.  The Council then moved and properly seconded to go into executive session.  The vote to go into executive session was unanimous based upon the quorum present.[9]

Upon entering executive session, the Council was briefed by the City Attorney on the current status of the case, *Philip Benham vs. City of Jackson, Mississippi, et al.,* Cause No. 3:19-cv-00911 ("Benham"), following the November 12, 2020, teleconference with the Court.  At the conclusion of the briefing, the Council, as the legislative body for the City of Jackson, determined that the following ordinances should be repealed in their entirety: Sections 86-401 through 86-409 of the Jackson Code of Ordinances.  An emergency item introducing an ordinance to repeal the aforementioned ordinances was added to the special meeting agenda by a unanimous vote of the Council,[10] entitled *Ordinance of the City of Jackson Repealing Section 86-401 through 86-409 of the Jackson Code of Ordinances* ("Ordinance Repealing § 86-401, *et seq.*").  The Council moved and properly seconded the adoption of said emergency item, which was approved unanimously by a quorum of the Council present.[11]  The Council then moved and properly seconded to

---

[7] Pursuant to MCA § 25-41-7.
[8] Pursuant to MCA § 21-8-11.
[9] Pursuant to MCA §§ 21-8-11 and 25-41-7.
[10] Pursuant to § 2-63, Jackson Code of Ordinances.
[11] Pursuant to MCA § 21-8-11.

suspend their rules[12] to adopt said ordinance immediately. The motion to suspend the rules and adopt the ordinance immediately was approved unanimously by a quorum of the Council present.[13]

Having no further discussion, the Council voted unanimously by a quorum of the members present to come out of executive session[14] and Council President Banks announced to the public that the members present discussed potential and/or current litigation related to the *Benham* case. Council President Banks also stated to the public that the Council unanimously voted to add an emergency item to the special meeting agenda as an ordinance introduction, entitled, and that the quorum present approved the emergency item unanimously, voting to suspend the rules to adopt said ordinance immediately. The special meeting was then adjourned, at which time a certified order of the action taken by the Council during the special meeting was drafted by the Clerk of Council, and executed by the Municipal City Clerk.

Following the Council's special meeting on November 16, 2020, the City filed its Motion to Dismiss as Moot [34], and a certified copy of the order of action taken by the Council adopting the Ordinance Repealing § 86-401, *et seq.,* as an Attachment [35], emailing notice of the same to the Court and the parties. Later that day, Plaintiff filed a document with the Court, entitled "Notice of Statement of Plaintiff's Position" [36], opposing the City's motion. The Court scheduled a teleconference for November 18, 2020.

---

[12] Pursuant to § 2-73, Jackson Code of Ordinances.
[13] Pursuant to MCA § 21-8-11.
[14] Pursuant to MCA § 25-41-7.

**November 18, 2020, Teleconference**

On November 18, 2020, the Court stated that a motion to dismiss had been filed and that it wanted to hear from the defendant.  Counsel outlined the City's position regarding repeal of the Ordinance rendering the preliminary injunction moot.  The Court then asked counsel about the preliminary injunction having "already been entered," on November 12, 2020, when the Court made a "ruling from the bench."  The Court recounted the November 12, 2020, teleconference, noting that, due to mistake the proceedings were not recorded but that a ruling had occurred.  Counsel for Defendants was not prepared to argue this point, as the City had not contemplated that the November 12, 2020, teleconference constituted the entry of an order granting a preliminary injunction.  However, counsel referenced the lack of written order and record, and that the City had repealed the Ordinance in advance of the entry of a preliminary injunction. The Court directed the parties to fully brief their positions regarding the impact of the November 12, 2020, teleconference, as well as the issues related to Defendants' motion to dismiss.

The Court followed the November 18, 2020, teleconference by posting Minutes to the docket.  However, the Minutes stated a briefing schedule that was inconsistent with the City's records, and provided details of the November 18, 2020, teleconference that were inconsistent with the City's understanding of the purpose of briefing.  The City requested a follow-up teleconference for clarification, which was scheduled for November 23, 2020.  On November 23, 2020, the Court heard from the parties and stated it would get back with the parties on November 24, 2020.  On November 24, 2020, the Court met with the parties by teleconference and indicated that an order would issue outlining the

Court's position, the issues to be briefed, and a briefing schedule.  Said Order [38] issued

on November 24, 2020, and the City submits this memorandum of law accordingly.

## ARGUMENT

### A. A preliminary injunction must be in writing and entered on a separate document

Fed.R.Civ.P. 65(d)(1) requires that every order granting an injunction and every

temporary restraining order must: "(A) state the reasons why it is issued; (B) state its

terms specifically; and (C) describe in reasonable detail—and not by referring to the

complaint or other document—the act or acts restrained or required." "These

prerequisites are designed to protect those who are enjoined by informing them of what

they are called upon to do or refrain from doing in order to comply with the injunction or

restraining order." *Federal Practice and Procedure* (Wright & Miller) § 2955 (3rd

ed.)("Form and Scope of Injunctions or Restraining Orders").

Fed.R.Civ.P. 52(a) requires the court to make findings of fact and conclusions of

law if it grants or refuses a preliminary injunction. *TEC Engineering Corp. v. Budget

Molders Supply, Inc.*, 82 F.3d 542, 544-545 (5th Cir. 1996). "As many courts have made

clear, a full and fair compliance with this requirement is of the highest importance to a

proper appellate review of the grant or denial of a preliminary injunction." *Federal

Practice and Procedure* (Wright & Miller) § 2576 ("Requirement of Findings —

Injunctions"); *Bratcher v. Clarke*, 725 Fed. Appx. 203, 206 (4th Cir. 2018) (where the

district court abused its discretion in denying plaintiff's renewed motion for preliminary

injunction because it failed to make specific findings of fact and conclusions of law, thus

making it difficult for appellate court to conduct meaningful review).

Moreover, Fed. R. Civ. P. 65(d) specifically "contemplates the issuance of a written order." *Federal Procedure, Lawyers Edition*, § 47:29 ("Effect of injunction in form of oral order"). This requirement is illustrated in *Lau v. Meddaugh*, 229 F.3d 121 (2nd Cir. 2000). In that case, the district judge entered a sua sponte oral order enjoining a pro se plaintiff from filing in that district any action on the same underlying facts unless he first submitted the complaint to a United States Magistrate Judge for vetting. *Lau v. MEddaugh*, 229 F. 3d at 122. The pro se plaintiff had filed three previous federal lawsuits, and two state lawsuits, involving the same matter. *Id.* The district judge's oral injunction was apparently issued at a pretrial conference where the complaint was dismissed sua sponte as frivolous pursuant to 28 U.S.C. 1915. *Id.* However, district judge did not memorialize the injunction in a written order. *Id.* On appeal, the pro se plaintiff argued that the district court violated his right to due process by affording him no prior notice that he might be subject to the filing injunction. The Second Circuit agreed with the appellant that he was entitled to notice that he might be subject to a filing injunction and, further held that the  district court should have provided a written ruling, stating:

> Finally, we note that the district court did not memorialize the oral order in a formal injunction. Federal Rule of Civil Procedure 65(d), which provides the standards for the form and scope of injunctions, contemplates the issuance of a written order. See Fed.R.Civ.P. 65(d). The provisions of this rule "are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). Compliance with this rule is essential because, "until a district court issues an injunction, or enters an order denying one, it is simply not possible to know with any certainty what the court has decided." *Gunn v. Univ. Comm. to End War in Viet Nam*, 399 U.S. 383, 388, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970). Since an injunctive order prohibits conduct under threat of judicial punishment, fairness requires that the litigants receive explicit notice of precisely what conduct is outlawed. See *Lessard*, 414 U.S. at 476, 94 S.Ct. 713. Such notice and specificity foster effective enforcement. See id. Finally, detailed injunctions are needed to facilitate appellate review. See *Fonar Corp. v. Deccaid Services, Inc.*, 983 F.2d 427, 429–430 (2d Cir.1993) (citing *Lessard*, 414

U.S. at 476–77, 94 S.Ct. 713). "[S]trict adherence to the Rules is better practice and may avoid serious problems in another case." *Clarkson*, 544 F.2d at 633 (discussing Fed.R.Civ.P. 65(d) and 52(a)).

*Lau v. Meddaugh,* 229 F. 3d at 123.

The requirement of a written order for an injunction is consistent with Rule 58(a), which states that "[e]very judgment and amended judgment must be set out in a separate document." *In re Bradley*, 588 F.3d 254, 262, n.6 (5ᵗʰ Cir. 2009). Rule 58(a) is applicable to injunctions by virtue of Rule 54(a), which defines "judgment" to include "a decree and any order from which an appeal lies." *Id.* Under 28 U.S.C. 1292(a)(1), an appeal lies with the circuit court from a district court order granting an injunction. *Id.* (( a)....... the courts of appeals shall have jurisdiction of appeals from: (1) [i]nterlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions....").

The Seventh Circuit in *Bates v. Johnson*, 901 F.2d 1424 (7ᵗʰ Cir. 1990) and *Hispanics United of DuPage County v. Village of Addison*, 248 F.3d 617 (7ᵗʰ Cir. 2001) each held that an oral injunction is not enforceable but must be recorded on a separate document entered under Fed.R.Civ.P. 58. The Fifth Circuit has recognized instances where a contempt violation of an oral injunction may be sufficient to support a finding of civil contempt, but distinguishes the posture of the case before it from the Seventh Circuit rulings. See, *In re United States Bureau of Prisons, Department of Justice*, 918 F.3d 431, n.3 (5ᵗʰ Cir. 2019), affirming the district court's contempt sanction for the violation of an oral injunction where the contemnor was aware of the injunction and in fact considered himself bound by it. *In re Bradley* distinguished the Seventh Circuit rulings in *Bates* and *Hispanics United*, as follows:

Thompson suggests that we must either accept his position or split with these Seventh Circuit cases, but we conclude there is no need for that choice. This case arises in a different context from the Seventh Circuit decisions, and presents different circumstances. *Bates* and *Hispanics United* discussed the inadequacy of oral decrees in determining whether there was a valid, appealable order, not in the context of contempt proceedings. Furthermore, in the present case, in contrast to the district courts in *Bates* and *Hispanics United*, the bankruptcy court did follow up with an injunction materially identical to the oral command.  In contrast to parties before the Seventh Circuit, *Beutel* was held in contempt for violating an order he considered to be binding, and which, in any case, would shortly become binding upon him. The bankruptcy court held *Beutel* in contempt for violating a central, common prohibition in the oral injunction and ultimate written injunction—the command to retain the consideration from Trust property sales in the entities whose property was sold, rather than diverting funds to entities potentially unreachable by the bankruptcy trustee. There is no allegation of clear error in the district court's factual finding that Beutel in fact considered himself bound by the "oral injunction," and that he falsely claimed he consummated the subject transactions in ignorance of it. The question we face is not whether the bankruptcy court acted properly to create an effective, appealable order. It is whether Beutel's manifestly improper actions can render him liable for contempt.

*In re Bradley,* 588 F.3d at 262 (citations and internal quotations omitted).

The present matter addresses only whether an effective, appealable order was entered on November 12, 2020.  The City submits that it never considered a preliminary injunction to have been entered, having been advised by letter in advance of the teleconference that the Court intended to "share its conclusions;" having heard no directive during the teleconference that it was enjoined as of that date, or the parameters of same; and having been advised that a written opinion would be filed at a later date once completed.  Moreover, the difference between what the City understood at the close of the November 12, 2020, teleconference and what Plaintiff claims it should have understood cannot be examined without a record of the proceedings.  Notwithstanding, pursuant to the Federal Rules of Civil Procedure and applicable case law, as set forth above, the oral

statements made during the November 12, 2020, teleconference did not constitute an effective, appealable order.

### B. **The Plaintiff's retrospective claims for declaratory and injunctive relief are moot**

Article III grants judicial power only over "Cases" or "Controversies." U.S. CONST. art. III, § 2. Whether a case or controversy remains live throughout litigation is a jurisdictional matter because federal courts have no authority to hear moot cases. *United States v. Heredia-Holguin*, 823 F.3d 337, 340 (5th Cir. 2016).

"A claim is moot when a case or controversy no longer exists between the parties." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017). Mootness "can arise in one of two ways: First, a controversy can become moot 'when the issues presented are no longer 'live.' A controversy can also become moot when 'the parties lack a legally cognizable interest in the outcome.'" *Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993) (internal citations and quotations omitted). The mootness doctrine "applies to equitable relief." *Brinsdon*, 863 F.3d at 345 (citing *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 n.32 (5th Cir. 2009)). "Because here the plaintiffs seek a declaratory judgment and an injunction, the mootness doctrine applies." *Kovac v. Wray*, 449 F.Supp.3d 649, 653 (N. D. Tex. March 27, 2020).

"It makes sense, then, that a case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed." *Spell v. Edwards*, 962 F.3d 1775-1779 (5th Cir. June 18, 2020). "Once the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.* at 1779. As recently as this year, the U. S. Supreme Court has held that a

Petitioners' claim for declaratory and injunctive relief under the Second Amendment against a law regarding the transport of firearms was moot when the law was amended to give "the precise relief that [the plaintiffs] requested." *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 ( April 27, 2020).  See also, *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1259 (11th Cir. 2007) (where the city amended the noise ordinance after the action was brought, mooting the challenge to its enforcement procedures); *Fantasy Ranch Inc. v. City of Arlington, Tex.*, 459 F.3d 546, 564 (5th Cir. 2006) (where, after the action was filed, the city amended the licensing provisions to enhance the due process protections afforded owners of a sexually oriented business in license-suspension proceedings and the challenge to the pre-amendment ordinance was properly dismissed as moot); *International Women's Day March Planning Committee v. City of San Antonio*, 619 F.3d 346, 357 (5th Cir. 2010) (where the 1988 ordinance regulating processions was repealed and replaced with a new ordinance in 2007, the action was filed after the 2007 ordinance was adopted rendering challenges to enforcement of the 1988 ordinance moot and enjoining enforcement of a policy no longer in effect pointless); *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 799 (7th Cir. 2016) (where repeal of two ordinances mooted the claims for injunctive and declaratory relief, but not the claim for damages);  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900-902 (9th Cir. 2007) (where, after the plaintiff brought  suit attacking the constitutionality of the billboard ordinance, the city repealed the ordinance and enacted a valid new ordinance that prohibited all billboards, mooting the claims for prospective relief and holding that the "mere possibility" of reenactment does not defeat mootness, and that repeal in response to litigation "does not alone show the city's intent

to later reenact the challenged ordinance;" and where the damages claim for denial of permits under the repealed ordinance survived dismissal but failed on the merits); *AT&T Communications of Southwest, Inc. v. City of Austin*, 235 F.3d 241, 243 (5th Cir. 2000) (where, in response to state legislation, the city repealed the challenged ordinance and explicitly waived any recovery of past fees under the ordinance, rendering the challenge to the ordinance moot).

**C.** **The issue of  whether a government's post-filing change of an unconstitutional policy or ordinance moots nominal-damages claims is presently before the United States Supreme Court in Uzuegbunam v. Preczewski and is scheduled for oral argument on January 12, 2021**

The Fifth Circuit, along with the majority of other courts of appeal, holds that a claim for nominal damages avoids mootness. *Morgan v. Plano Independent School Dist.*, 589 F.3d 740,748 and n.32 (5th Cir. 2009).  Stated another way, "[t]he mootness doctrine applies to equitable relief but will not bar any claim for damages, including nominal damages." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017) (citing *Morgan*).

 Several courts, however, consider whether there would be any "practical effect" of allowing nominal damages to survive as a lone remedy.  *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248 (11th Cir. 2017); see also, *Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (holding the plaintiff's claim for nominal damages moot as to the prior versions of an amended ordinance because a claim for nominal damages "cannot revive an otherwise moot constitutional claim against a regime no longer in existence," quoting *Morrison v. Bd. of Educ.*, 521 F.3d 602, 611 (6th Cir. 2008); *Soto v. City of Cambridge*, 193 F.Supp.3d 61, 71 (D. Mass. 2016) (holding that a

claim for nominal damages was insufficient to save the case from being dismissed as moot); *Freedom from Religion Found., Inc., v. Concord Cmty. Schs.*, 207 F.Supp.3d 862, 874, n.7 (N.D.Ind. 2016) (noting that multiple district courts have found nominal damages insufficient to save an otherwise moot constitutional claim), *aff'd*, 885 F.3d 1038 (7th Cir. 2018).

In *Flanagan*, the 11th Circuit found that the plaintiff's lone claim for nominal damages would not sustain an otherwise moot case. *Flanagan*, 868 F.3d at 1253-54. The case involved a challenge to a municipal ordinance that prohibited the sale of sexual devices. *Id.* The plaintiffs alleged the ordinance violated their rights under the Fourteenth Amendment. *Id.* While the case was pending before the 11th Circuit, the city repealed the challenged ordinance, mooting the claims for declaratory and injunctive relief and leaving a prayer for nominal damages as the lone remaining claim. The Court held that the claim for nominal damages, which "functions as a declaratory judgment" and therefore should be treated the same under the law, was insufficient to save this otherwise moot constitutional challenge to a municipal ordinance, and dismissed the case as moot. *Id.* at 1264.

Recently, the 11th Circuit in *Uzuegbunam v. Preczewski*, 781 F. App'x 824 (11th Cir. 2019) reaffirmed the holding in *Flanigan*, that a government's policy change moots the plaintiffs' case and for injunctive and declaratory relief and that the "claims for nominal-damages could not save their otherwise moot constitutional challenges to the [prior government policies.]" Opinion, p. 3. *Uzuegbunam* involved designated reserved speech zones on a college campus. *Id.*, pp. 3 -5. After the lawsuit was filed, the college terminated the speech related  policies. *Id.*, p. 6. The case was dismissed as moot. *Id.*, p. 20.

On July 9, 2020, the United States Supreme Court granted the Chike Uzuegbunam and Joseph Bradford's Petition for Writ of Certiorari. *Uzuegbunam v. Preczewski*, Docket No. 19-968. The issue before the Supreme Court is "whether a government's post-filing change of an unconstitutional policy moots nominal-damages claims that vindicate the government's past, completed violation of a plaintiff's constitutional right." https://www.supremecourt.gov/docket/docketfiles/html/qp/19-00968qp.pdf.

The case is scheduled for oral argument on Tuesday, January 12, 2021, approximately five weeks from now. The City finds it notable that Amicus Curiae Briefs in support of the Respondents were filed by the following organizations: National Conference of State Legislatures; The Council of State Governments; The National Association of Counties; The National League of Cities; The United States Conference of Mayors; The International City/County Management Association; The International Municipal Lawyers Association; The Government Finance Officers Association; The National School Boards Association.

### D. <u>The case should be stayed pending the Supreme Court's decision in Uzuegbunam v. Preczewski</u>

This Court has the authority to issue a stay of proceedings: "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The decision to issue a stay is a matter within the discretion of the trial court. See, *Landis*, 299 U.S. at 255-56; 57 S. Ct. at 166-67. "In determining whether a stay is appropriate pending the resolution of another case, a district court must consider various competing interests, including: (1) the

potential prejudice to plaintiffs from a brief stay; (2) the hardship to defendants if the stay is denied; and (3) the judicial efficiency in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Coker v. Select Energy Services*, LLC, 161 F.Supp.3d 492, 495 (S.D. Tex. 2015),

This Court and the parties will benefit from the Supreme Court's disposition of the *Uzuegbunam* case, which will be argued on January 12, 2021. District courts enter stays when a decision of an appellate court will decide a central issue in the case before it. See, e.g., *Tax Analysts & Advocates v. Internal Revenue Service*, 405 F. Supp. 1065, 1067 (D.D.C. 1975) (staying the district court case when a petition for certiorari in a similar case was pending before the Supreme Court; in view of "the realization that the Supreme Court could, in effect, overrule [a ruling] should it choose to grant the petition for certiorari" in another case, "the Court is persuaded that all further proceedings in this action should be stayed pending the Supreme Court's ruling on the petition for certiorari"); *Coombs v. Diguglielmo*, 2004 WL 1631416 at *1-*2 (E.D.Pa. July 21, 2004) (stay granted in light of pending petition for certiorari in case that may have "significant impact" on case before the court); *Felix v. United States*, 1992 WL 361745 at *1 (N.D.Cal. April 29, 1992) (stay of proceedings granted to allow government opportunity to consider seeking Supreme Court review of court of appeals' decision); see also, *Carty v. Rodriguez*, 211 Fed. Appx. 292, 293 (5th Cir. 2006) (staying district court proceedings pending appeal of threshold qualified immunity question).

As the above courts have recognized, it makes eminent sense for a district court to refrain from deciding the very same issues that will soon be resolved by the Supreme Court. Because the plaintiff's claim for declaratory and injunctive relief is moot, the

plaintiff will not be prejudiced by a stay to await a ruling from the United States Supreme Court on the issue of the award of nominal damages, the only issue remaining in the case. On the other hand, the City will experience economic hardship if the court enters a judgment for nominal damages and in turn make an attorney's fees award. Finally, a decision from the Supreme Court will simplify this Court's ruling.

## <u>CONCLUSION</u>

For the foregoing reasons, the City respectfully requests that the Court grant its Motion to Dismiss as Moot [34] in its entirety, or, in the alternative, to grant the City's motion as to the retrospective claims of preliminary injunction and declaratory judgment, and to hold the issue of nominal damages in abeyance pending a Supreme Court ruling on the issue of the prospective claim for nominal damages.

**THIS** the 9th day of December, 2020.

Respectfully submitted,

**CITY OF JACKSON DEFENDANTS**

By: _/s/ Lee Thames_____
    Lee Thames, MSB # 10314
    Special Assistant to the City Attorney
    Timothy Howard, MSB # 10687
    City Attorney for the City of Jackson, Mississippi
    J. Paige Wilkins, MSB # 102052
    Deputy City Attorney

**OF COUNSEL:**
Timothy Howard, City Attorney
OFFICE OF THE CITY ATTORNEY
Post Office Box 2799
Jackson, MS 39207-2799
601.960.1799 (telephone)
601.960.1756 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I, Lee Thames, do hereby certify that I have this day delivered a correct and true copy of the foregoing document via ECF to the following:

Nathan W. Kellum
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
Email: nkellum@crelaw.org

So Certified, this the 9th day of December, 2020.

By: *<u>/s/ Lee Thames</u>*
Lee Thames