## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**PHILIP BENHAM**                                                    **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 3:19-CV-911-HTW-LGI**

**CITY OF JACKSON, MISSISSIPPI, and**
**JAMES E. DAVIS, in his official capacity as**
**Chief of Police for Jackson Police**
**Department**                                                       **DEFENDANTS**

---

## ORDER

---

BEFORE THIS COURT is the *Motion to Dismiss as Moot* **[Docket no. 34]** filed by Defendants City of Jackson, Mississippi ("the City") and James E. Davis, Chief of Police for the Jackson, Mississippi Police Department ("Davis") (hereinafter collectively referred to as "Defendants"). Defendants filed their motion under the auspices of Federal Rule of Civil Procedure 12(b)(6)[1], alleging that a changed circumstance has rendered moot Plaintiff Philip Benham's ("Plaintiff" or "Benham") Verified Complaint [Docket no. 1] and Petition for Preliminary Injunction [Docket no. 4].

Plaintiff's causes of action include a First Amendment[2] violation and a Fourteenth Amendment[3] violation under Title 42 U.S.C. § 1983[4]. Plaintiff has further requested declaratory

---

[1] Federal Rules of Civil Procedure 12(b)(6) states as follows:
"(b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
(6) failure to state a claim upon which relief can be granted."

[2] Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. Amend. I

relief under the authority of Title 28 U.S.C. §§ 2201[5] and 2202[6]. The gravamen of Benham's lawsuit is whether certain recently adopted City Ordinances unconstitutionally prevent anti-abortion demonstrators from voicing their opposition to abortions at Mississippi's only abortion clinic.

Plaintiff opposes the Defendants' motion to dismiss, arguing that the changed circumstance[7] does  not preclude this court from granting his requested relief for injunctive relief and nominal damages. Plaintiff contends further that, even if his request for injunctive relief is moot, he still has standing to maintain this suit based solely on his request for nominal damages.

---

[3] Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. Amend. XIV

[4] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1983 (West)

[5] (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C.A. § 2201 (West)

[6] Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.
28 U.S.C.A. § 2202 (West)

[7] The "changed circumstance" refers to repeal of Section 84-401 through 86-409 of the Jackson Code of Ordinances, *An Ordinance of the City of Jackson, Mississippi, Prohibiting Certain Activities Near Health Care Facilities.* The specifics of these ordinances are discussed in detail *infra*.

This court has reviewed thoroughly the submissions of the parties and the relevant jurisprudence. Upon concluding its analysis, this court finds that it must GRANT the Defendants' *Motion to Dismiss as Moot* **[Docket no. 34]** for the reasons following.

## I.    PERTINENT FACTS

Benham is an Evangelical Christian and traveling missionary who believes that sharing his religious views is an important part of exercising his faith.  Benham is the former leader of Operation Save America, a faith-based anti-abortion advocacy group. In furtherance of his anti-abortion religious views, Benham engages routinely in sidewalk protests on public accessways bordering abortion clinics throughout the United States of America. As part of their protests, Benham and his supporters display signage with controversial messaging and pass out religious literature with "a gospel message and abortion facts." Benham also attempts to engage individuals in conversation or debate on the topic of abortion, often utilizing a voice amplification device to do so.

According to Benham, he intended to travel to the City of Jackson, Mississippi in 2020 to protest outside of the Jackson Women's Health Organization (hereinafter referred to as "JWHO"), the only abortion clinic in the State of Mississippi. Benham contends that he has visited the JWHO location on numerous previous occasions[8] to share his pro-life views on public sidewalks outside the clinic, and that "in mapping out his schedule for 2020", he "specifically plan[ned] to travel to Jackson and share [his] pro-life message outside the JWHO while there". [Docket no. 4-1, p. 9].

---

[8] Benham asserted that he recalls being at the JWHO for 10 days in July 2006, and for 3 or 4 days each in 2011, 2012, 2013, and 2014. He stated further that he "stopped at the JWHO several times to share [his] beliefs… whenever [he] happened to be passing through [the City], which often occurred when [he] trips to Dallas, [Texas], New Orleans, [Louisiana], or other cities in the region." [Docket no. 23-1, 4].

On October 1, 2019, before Benham's planned trip to Jackson, Mississippi, actually materialized, the City, through its City Council, passed a series of ordinances, §§ 86-401, *et seq* (hereinafter referred to collectively as the "Ordinances"). The Ordinances, entitled "Prohibiting Certain Activities Near Health Care Facilities", banned three (3) forms of action around any health care facility[9], as follows:

(1) Persons are prohibited from approaching other persons to protest or engage in conversation with that person within one hundred (100) feet of the entrance to any health care facility closer than eight (8) feet without consent of that person. *See* JACKSON, MISS., CODE § 86-403; (2) Persons are also prohibited from protesting within fifteen (15) feet of the entrance of any health care facility. *See* § JACKSON, MISS., CODE 86-404; and (3) Persons are prohibited from shouting or using voice amplification devices within one hundred (100) feet of the entrance to any health care facility. *See* JACKSON, MISS., CODE § 86-405.

The Ordinances were to be enforceable only during the operating hours of a health care facility. *See* JACKSON, MISS., CODE § 86-406. Violation of the Ordinances amounted to a misdemeanor "punishable by a fine of not more than $1,000.00, or by imprisonment for not more than 90 days, or both." *See* JACKSON, MISS., CODE § 86-409.

Benham's Complaint alleges that the City's insistence on enforcing the Ordinances chilled his speech activities and deterred him from traveling to Jackson, Mississippi to protest outside the JWHO.

---

[9] The Ordinances define "health care facilities" as:

> Includ[ing] but [] not limited to hospitals, physicians' offices, walk-in medical centers, medical diagnostic centers, surgical centers, and facilities which are licensed, certified or otherwise authorized to perform medical procedures in this state and to provide health services. It shall not include residential homes, convalescent homes or other facilities that provide long term residency.

JACKSON, MISS., CODE § 86-401.

Aggrieved, Benham filed suit against the Defendants, alleging a pre-enforcement facial challenge to the Ordinances, arguing that he intends to engage in the exact, now-criminalized conduct that the Ordinances expressly prohibit.

## II.    PROCEDURAL HISTORY

On December 11, 2019, Benham filed his Verified Complaint against the Defendants, seeking declaratory and injunctive relief, as well as nominal damages.

The following are excerpts from Benham's Verified Complaint [Docket no. 1]:

76. As he has done on a regular basis in the past, Benham wants to go back to the public sidewalks next to the parking lot entrance of JWHO and share his life-affirming message, but § 86-401, *et seq,* prevents him from conveying his views to his desired audience in a number of overlapping ways, effectively censoring his pro-life message.

89. Benham ardently desires to return to the public sidewalks and streets outside of the JWHO abortion clinic, but he is presently chilled and deterred from returning to the area and sharing his views due to the passage of § 86-401, *et seq*. If he complies with the ordinance, his speech would be ineffective and fruitless. But if he does not comply, he would subject himself to criminal sanction and arrest.

Contemporaneously with his Complaint, Benham filed a Motion for Preliminary Injunction, requesting this court enjoin the City from enforcing City Ordinance § 86-401, *et seq*. against him. Benham served the Defendants on December 11, 2019. They answered the Complaint on January 7, 2020 and submitted their response to Benham's Motion for a Preliminary Injunction on January 11, 2020.

This court, on April 23, 2020, set a hearing date on the motion for preliminary injunction, ordering the parties to brief whether Benham possessed standing to bring his lawsuit. On May 3, 2020, the parties filed their supplemental briefs. Benham further filed an affidavit as on that day, confirming his planned intentions to engage in activities proscribed by § 86-401, *et. seq*. in 2020. Benham's Affidavit [Docket no. 23-1], filed well after this lawsuit had commenced, stated the following:

I want to return to the JWHO clinic this year of 2020 and have made plans to go there this year. I still have plans to visit this year, even with travel-related concerns surrounding the COVID-19 pandemic. Though I initially thought I would go in the summer, I now plan to go to Jackson and visit JWHO during the second week of September this year. I have it marked down on my calendar and have made specific plans to visit at that time.

On May 6, 2020, this court held an in-person hearing on Benham's motion for preliminary injunction. During that hearing, this court acknowledged receipt of the supplemental briefing, heard oral arguments, and granted the parties permission to submit additional legal authority.

This court also announced its interest in conducting an outside-site visit at the JWHO, since the Ordinances proscribed specific activities at various distances around the clinic. The parties did not object to the site visit; so, the court and the parties conducted the site visit on June 8, 2020. During this site visit by the court and the parties, this court took a number of photographs of the areas and distances under consideration on account of the Ordinances' prohibitions. This court, thereafter, held a telephone conference with the parties to determine if anyone had objections to the photographs. The parties expressed no objections.

On October 20, 2020, this court entered a Text Order announcing that it soon would issue a ruling on the pending motion for preliminary injunction. Taking note of Benham's alleged intention to come to Jackson, Mississippi, to engage in activity that would subject him to criminal punishment, this court sought to enter a ruling as soon as practicable.

On November 6, 2020, this court emailed the parties and explained that it had to alter the timing of the ruling on the preliminary injunction due to staff illness and that it would issue either a bench opinion or written opinion on November 11, 2020. On November 10, 2020, the day before the scheduled ruling, this court notified the parties that it had to delay its ruling on the

motion because the scheduled time fell on Veteran's Day, a federal holiday. This court rescheduled the telephone conference for the next, day, November 12, 2020, to render, orally, its ruling.

On Thursday, November 12, 2020, this court issued its ruling on the motion for preliminary injunction by reading its bench opinion to the parties. Because of a scheduling discrepancy, no court reporter was available to transcribe the telephonic proceeding; however, in view of the previous delays, this court decided to issue its ruling as scheduled. No party objected.

The court's bench opinion provided, as follows: this court orally granted Benham's Preliminary Injunction Motion and enjoined the City from enforcing § 86-401, *et. seq*. As part of its oral recitation of its bench opinion, this court recited the underlying facts of the case; the standard for evaluating a motion for preliminary injunction; an in-depth legal analysis on standing; ripeness; the questioned constitutionality of the Ordinances; and the grounds for granting the preliminary injunction.

The court, in granting the motion for preliminary injunction, found speech to be a protected activity, public sidewalks to be a public forum, and the Ordinances to be content-neutral. The court applied the intermediate standard of scrutiny. This court explained that a narrowly tailored restriction (though not the least restrictive), with alternative channels of communication available, is satisfied if it does not burden more speech than necessary to further the legitimate government interest. The three overlapping restrictions[10] of the Ordinances were not narrowly tailored, said the court, and would not, therefore, pass constitutional muster as to the preliminary injunction.

---

[10] See Page 3 *supra*.

At the conclusion of this bench opinion, this court informed the parties that its verbal ruling had been read from a written Opinion that it would soon file. No party objected to this procedure.

Immediately following the oral ruling, and during the November 12, 2020, telephone conference, this court asked counsel for the defendants whether they wished to go forward with a trial on the case as a whole and obtain a trial date in lieu of appealing the oral ruling. Defendants' counsel requested additional time to confer before responding to the court's inquiry.

On November 13, 2020, the next day, the City instructed its police department to refrain from enforcing the Ordinances and took down signage relating to the ordinance. On November 16, 2020, the City Council called a special meeting. The Council, as the legislative body for the City of Jackson, determined that the subject Ordinances, sections 86-401 through 86-409 of the Jackson Code of Ordinances, should be repealed in their entirety, effective immediately. The Council dwsvoted unanimously to approve the Repealing Ordinance, based upon the quorum present. The City had not informed this court nor Benham's counsel of its intentions to repeal the Ordinances.

On November 16, 2020, the same day, before this court had the opportunity to file the written version of its bench opinion, the City filed its subject motion to dismiss. The City confirmed that it had repealed § 86-401, *et. seq*. This change in circumstances, argued the City, effectively rendered Benham's entire case moot.

Benham, on the same day, filed his Notice of Statement of Plaintiff's Position [Docket no. 36], alerting this court of his concerns, and confirming his desire to respond to the motion to dismiss. The attempted repeal, according to Benham, was not effective because Miss. Code § 21-13-11 provides that "[n]o ordinance shall be in force for one (1) month after its passage[.]"

An ordinance or repeal of an ordinance can only take an immediate effect under § 21-13-11 for select reasons. For an immediate effect, argued Benham, § 21-13-11 requires unanimous vote of "all members of the governing body," not just that of the quorum, as obtained by the City. The City, argued Benham, supposedly failed to obtain the vote of all members for the repeal of the ordinance.

This court set a telephone conference for two days later, November 18, 2020, to discuss these recent events. During the November 18, 2020 telephonic hearing, the City's counsel advised that the City was seeking dismissal of the case due to the repeal and alleged mootness of the lawsuit. Benham's counsel confirmed that Benham opposed the motion and wished to file a written response to the City's motion to dismiss. This court again reminded the parties that it had granted Benham's motion for preliminary injunction on November 12, 2020. It also informed the parties that the City was to inform the court whether the City wanted to proceed with a trial or appeal the ruling granting Benham's motion for preliminary injunction.  This court stated that it would issue a briefing schedule on the defendants' motion to dismiss based upon mootness.

This court further stated that it would file the written version of the bench opinion later that day. The City asked the court not to the written version of its bench opinion, seeking an opportunity argue that the court's oral ruling was ineffective. This court granted the City's request, stating it would refrain from filing its written opinion until the parties completed their supplementary briefing on this issue.

On November 20, 2020, this court entered a minute entry, setting out a briefing schedule for the City's motion on mootness. That  minute entry also mentioned a proposed stipulation for the proceedings on November 12, 2020, detailing the court's ruling and reading of its bench opinion granting Benham's motion for preliminary injunction. The City requested a telephone

conference for further clarity. This court granted the City's request and scheduled the conference for November 24, 2020.

On November 24, 2020, this court conducted a telephone conference and entered an Order, setting out the procedural status and disputes remaining before the court. The court's filed Order [Docket no. 38, pp. 4-5] explained:

> This court intends later to file the unpublished opinion from which this court read on November 12, 2020; unless persuaded otherwise by the arguments this court will consider after the above schedule order has been satisfied… Meanwhile, this court views the ordinances as being repealed and will not, according to the City, be reinstated and enforced. Should the City take a position contrary to this statement, the City is to notify this court immediately.

On April 21, 2021, this court conducted a telephonic conference to hear oral arguments on the issue of mootness and entered its Order [Docket no. 49] directing Plaintiff, if he so chose, to submit a response to Defendants' most recent memorandum brief addressing the impact of a recent United States Supreme Court case, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 794 (2021). This court, having analyzed thoroughly all supplemental submissions and relevant jurisdiction issues now issues its ruling, as follows.

### III.    STANDARD OF REVIEW

A plaintiff's complaint is appropriately dismissed under Federal Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)). This court must determine whether dismissal of a plaintiff's complaint is appropriate based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*.

Under Article III of the United States Constitution[11], federal courts, may adjudicate only actual, ongoing cases or controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). This requirement entails that, at a minimum, "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 477, 110 S.Ct. at 1253. Moreover, an "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) (internal quotations and citations omissions).

The Supreme Court routinely has cautioned that a case becomes moot "if an event occurs while a case is pending that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (internal citation omitted). Thus, even a once-justiciable case becomes moot and must be dismissed "when the issues presented are no longer 'live', or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).

---

[11] U.S. Const. art. III, **Section 2 states:**  The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States,--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

# IV.    LEGAL ANALYSIS

## A.  *The Preliminary Injunction*

Defendants argue first that this court's oral entry of its bench opinion, on November 12, 2020, was not an effective entry of a preliminary injunction because it was not memorialized in writing. Plaintiff, contrariwise, takes the position that this court properly granted his motion for preliminary injunction from the bench, enjoining the City from enforcing the Ordinances on November 12, 2020.

Federal Rule of Civil Procedure 65(d)(1) requires that every order granting an injunction and every temporary restraining order must: "(A) state the reasons why it is issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." These prerequisites are in place to "protect those who are enjoined by informing them of what they are called upon to do or refrain from doing in order to comply with the injunction or restraining order." Federal Practice and Procedure (Wright & Miller) § 2955 (3rd ed.)("Form and Scope of Injunctions or Restraining Orders").

Federal Rule of Civil Procedure 52(a) requires the court to make findings of fact and conclusions of law if it grants or refuses a preliminary injunction. *TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 544-545 (1st Cir. 1996). "As many courts have made clear, a full and fair compliance with this requirement is of the highest importance to a proper appellate review of the grant or denial of a preliminary injunction." Federal Practice and Procedure (Wright & Miller) § 2576 ("Requirement of Findings —Injunctions"); *Bratcher v. Clarke*, 725 Fed. Appx. 203, 206 (4th Cir. 2018) (where the district court abused its discretion in denying plaintiff's renewed motion for preliminary injunction because it failed to make specific

findings of fact and conclusions of law, thus making it difficult for appellate court to conduct meaningful review).

The requirement of a written order for an injunction is consistent with Rule 58(a) of the Federal Rules of Civil Procedure, which mandates that "[e]very judgment and amended judgment must be set out in a separate document." *In re Bradley*, 588 F.3d 254, 262, n.6 (5th Cir. 2009). Rule 58(a) is applicable to injunctions by virtue of Rule 54(a), which defines "judgment" to include "a decree and any order from which an appeal lies." *Id*. Under 28 U.S.C. 1292(a)(1), an appeal lies with the circuit court from a district court order granting an injunction. *Id*. (( a)……. the courts of appeals shall have jurisdiction of appeals from: (1) [i]nterlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions….").

The United States Court of Appeals for the Fifth Circuit though, in a 2019 case, *In re United States Bureau of Prisons, Dep't of Just.*, 918 F.3d 431, 437 (5th Cir. 2019), upheld its previous ruling affirming a district court's contempt sanction for the violation of an oral injunction, where the contemnor was aware of the injunction and 'in fact considered himself bound by' it." *Id.* (Quoting *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009).

The Fifth Circuit in *In re United States Bureau of Prisons* found that a district court did not have the authority to hold officials in contempt because the officials were fulfilling their statutory duties. The Court reached its conclusion by affirming that the district court had imposed a final sanction in the form of an oral injunction against the officials. The Court expounded that although the district court "did not enter a written order, despite indicating at the sanctions hearing that it planned to do so, the oral injunction was not tentative, and the district court did not indicate that the sanction was open to further argument or reconsideration. The

district court had also made clear that the injunction would be effective immediately, stating that, "after today", if some individual in the Bureau of Prisons was to execute his duty in a manner in violation of this Court's findings, he would be subject to individual liability. *In re U.S. Bureau of Prisons, Dept. of Just.,* 918 F.3d 431, 437 (5th Cir. 2019).

The Court noted that "it is highly unusual for a district court to make a finding of contempt and to issue a contempt sanction without entering a written order explaining the basis for its findings and describing the sanction imposed", and that "these omissions are relevant to the merits of [an] appeal." A lack of procedural formality, however, clarified the Court, does not shield a district court's final decisions from appellate review under 28 U.S.C. § 1291[12]. *Id.*

The Court further stated:

> Other circuits similarly treat oral injunctions as enforceable orders. *See, e.g., Lau v. Meddaugh*, 229 F.3d 121, 123, 123 n.2 (2d Cir. 2000); *In re Charlotte Observer*, 921 F.2d 47, 48, 50 (4th Cir. 1990). We agree with the Second Circuit that, although Federal Rule of Civil Procedure 65(d) "contemplates the issuance of a written order," a district "court's failure to comply with the specific requirements of this rule does not render the injunction void." *Lau*, 229 F.3d at 123, 123 n.2; *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 577 (5th Cir. 2005) (explaining that a district court's failure to fully comply with Rule 65(d) "does not require that the injunction be reversed or vacated") (quotation omitted). As we noted in *Bradley*, 588 F.3d at 261–63, the Seventh Circuit appears to take a different position. *See Bates v. Johnson*, 901 F.2d 1424, 1427–28 (7th Cir. 1990) (holding that an oral injunction is not enforceable, and therefore not appealable). We do not follow the Seventh Circuit's view that a party "is under no judicial compulsion" until a judge "record[s] an injunction or declaratory judgment on a separate document." *Id*. at 1428.

*In re United States Bureau of Prisons, Dep't of Just.*, 918 F.3d 431, 438 (5th Cir. 2019).

---

[12] The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

28 U.S.C.A. § 1291 (West)

This court is persuaded that its bench opinion, issued on November 12, 2020, was effective. Having announced that the court wished to issue an expeditious ruling on the Plaintiff's motion for preliminary injunction,  having read to the parties its findings of fact and conclusions of law, this court expressly stated that the motion for preliminary injunction had been granted.  This court then asked the City whether it wanted to set the remaining issues for trial. Counsel for the City did not raise any objections to the court's ruling at this time; rather, counsel requested additional time to consult with their client before providing an answer to the court's inquiry.

The next day, on November 13, 2020, the City took affirmative steps to comply with this court's injunction. The City instructed its police department to refrain from enforcing the Ordinances and took down signage related to the Ordinances. The City then held a special meeting to repeal the Ordinances.

Plaintiff argues, *inter alia*, that the repeal was "not effective" because the Repealing Ordinance required the unanimous vote of all members of the governing body, not just of the quorum. Mississippi Code Annotated § 21-8-11 (2)[13], however, authorizes a mayor-council form of government, such as the City's, to give immediate effect to an ordinance by vote of the quorum. On November 16, 2021, the City Council called a special meeting and introduced an ordinance to repeal the Ordinances. The City Council then put forth a motion to adopt the Repealing Ordinance immediately, which was approved by a quorum of the Council present. The City's November 16, 2020 repeal of the Ordinances, therefore, was effective.

---

[13] MCA § 21-8-11(2) states in pertinent part: "Special meetings may be called at any time by the mayor or a majority of the members of the council. At any and all meetings of the council, a majority of the members thereof shall constitute a quorum and the affirmative vote of a majority of the members present at any meeting shall be necessary to adopt any motion, resolution or ordinance, or to pass any measure whatever unless otherwise provided in this chapter."

15

For the aforementioned reasons, this court finds that the preliminary injunction issued orally was in force on November 12, 2020. This court finds further that the City believed the injunction to be binding when it repealed the Ordinances on November 13, 2020.

**B.   _Benham's Claims for Declaratory and Injunctive Relief_**

This court addresses next whether the City's enactment of the Repealing Ordinance effectively moots the preliminary injunction and, consequently, Benham's claims for declaratory and equitable relief. As stated _supra_, this court's jurisdiction under Article III is limited to live cases and controversies, or "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." _Massachusetts v. EPA_, 549 U.S. 497, 516 (2007) (quoting _Flast v. Cohen_, 392 U.S. 83, 96 (1968)). "No justiciable controversy is presented when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." _Flast_, 392 U.S. at 96.

 This court, in granting Benham's motion for preliminary injunction, determined that Benham did not have to subject himself to criminal prosecution to challenge the Ordinances. Where a law deters or chills the plaintiff from exercising his constitutional rights, standing has been satisfied. _Justice v. Hosemann_, 771 F.3d 285, 291 (5th Cir. 2014). Benham alleged a pre-enforcement facial challenge to the Ordinances, arguing that he intended to engage in the exact conduct that the Ordinances prohibited; therefore, held this court, Benham had satisfied the injury-in-fact requirement for constitutional standing.

This court notes, however, that "standing" and "mootness" are two related yet distinct doctrines of justiciability. The Fifth Circuit has provided guidance on the legal analysis pertaining to these two doctrines in its opinion for _Pool v. City of Houston_, 978 F.3d 307 (5th

Cir. 2020). The *Pool* Court explained that "[u]nlike standing analysis, mootness accounts for such events that occur during the litigation. It ensures that the plaintiff's personal interest that existed at the commencement of the litigation (standing) continues throughout its existence (mootness). If intervening circumstances make it impossible for the court to grant any effectual relief, the case is moot." 978 F.3d at 313 (internal citations omitted).

The Fifth Circuit has recognized that "[s]uits regarding the constitutionality of statutes become moot once the statute is repealed." *Id*. (citing *Diffenderfer v. Cent. Baptist Church*, 404 U.S. 412, 414–15, 92 S.Ct. 574, 575–76, 30 L.Ed.2d 567 (1972); *Fed'n of Adver. Indus. Executives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir.2003) ("[W]e, along with all the circuits to address the issue, have interpreted Supreme Court precedent to support the rule that repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the City plans to [reenact] or already has reenacted the challenged law or one substantially similar.").

The mootness doctrine "applies to equitable relief." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017) (citing *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 n.32 (5th Cir. 2009)). In *New York State Rifle & Pistol Assn., Inc. v. City of New York, New York,* 140 S. Ct. 1525 (2020), for example, the United States Supreme Court found that amendments to New York City's handgun licensing scheme mooted the claims brought by a firearms association and individual licensees seeking declaratory and injunctive relief against enforcement of certain prohibitions. The subject amendments removed prohibitions on transporting firearms to a second home or shooting range outside of the city. The Court reasoned that the plaintiffs' claims were moot because "this [removal] was the precise relief that the firearms association and individual licensees had requested in the prayer for relief in their complaint. *Id.* (internal statutory citations omitted).

Benham filed the lawsuit *sub judice*, along with the petition for preliminary injunction, to prevent his speech from being chilled. Benham sought declaratory judgment and an injunction; therefore, the mootness doctrine applies to his request for equitable relief. As stated *supra*, mootness accounts for such events that occur during the litigation. Here, an intervening circumstance, namely the repeal of the Ordinances, makes it impossible for this court to grant Benham any effectual declaratory or injunctive relief. No evidence before this court suggests that the City plans to re-enact the challenged Ordinances. This court finds, therefore, that the Ordinances' repeal moots Benham's claims seeking declaratory and injunctive relief.

### C. *Benham's Claim for Nominal Damages*

This court, having found that Benham no longer has standing to pursue his claims for declaratory and injunctive relief, now addresses whether Benham's request for nominal damages is enough to keep this case alive. On March 8, 2021, the United States Supreme Court issued an 8-1 ruling which provides guidance to the courts on this issue.

In *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796, 209 L. Ed. 2d 94 (2021), one of the plaintiffs, Chike Uzuegbunam (hereinafter referred to as "Uzuegbunam") was an Evangelical Christian whose beliefs include sharing his faith. In 2016, Uzuegbunam was a student enrolled at Georgia Gwinnett College, a public college located in Lawrenceville, Georgia.

Uzuegbunam began engaging in conversations with other students and handed out literature on an outdoor plaza where students often gathered. Soon after Uzuegbunam began his evangelical activities, a campus police officer informed him that campus policy forbade his distribution of the written religion materials in that specific area and instructed him to stop.

Uzuegbunam next visited the Director of the Office of Student Integrity to learn more about the campus policy. The Director of the Office of Student Integrity informed Uzuegbunam he could not distribute nor speak about religion outside of two (2) designated "free speech expression areas" – comprising 0.0015 percent of the campus. The Director further informed Uzuegbuman that he had to obtain a permit to conduct his planned speech activities in the designated areas.

Uzuegbunam, thereafter, obtained a permit to express his religious views. Shortly after he began orating during his allotted time for his permit-allowed religious speech, another campus police officer approached Uzuegbunam and instructed him to stop his speech because there had been student complaints. Pursuant to the campus policy, explained the police officer, Uzuegbunam was prohibited from using the free speech zone to say anything that "disturbs the peace and/or comfort of person(s)." The campus police officer, abiding by this policy, threatened to take  disciplinary action against Uzuegbunam if he continued his discordant speech.

The *Uzuegbunam* lawsuit featured a second student, Joseph Bradford ("Bradford"), who shared Uzuegbunam's faith. Bradford, too, was a plaintiff similarly complaining that the Defendants had violated his religious speech rights pursuant to the campus policies above discussed. Bradford alleged that, although the college's policies had not been applied against him directly, his religious speech had been chilled because the college's actions toward Uzuegbunam deterred him (Bradford) from speaking about his religion.

The two plaintiffs filed a lawsuit arguing that the college's policies had violated their First Amendment right to Free Speech, seeking injunctive relief and nominal damages. Before the district court could reach the merits of plaintiffs' case, however, the college chose to discontinue the challenged policies. The college sought dismissal on the ground that the policy

changes had left the plaintiffs without standing to sue. The plaintiffs agreed that the policy changes rendered their request for injunctive relief moot, but disputed whether plaintiffs still had standing to maintain their suit based on their claim for nominal damages.

The United States Supreme Court held: "[b]ecause nominal damages were available at common law in analogous circumstances, we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a ***completed violation*** of a legal right." *Uzuegbunam*, 141 S. Ct. 792, 801–02, 209 L. Ed. 2d 94 (2021) (emphasis added). The Court stated that "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are, instead, the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages." *Id*. at 209.

The Court explained, however, that a plaintiff's request for nominal damages does not automatically guarantee entry to federal courts. In addition to redressability, stated the Court, the plaintiff must establish all other relevant requirements, such as standing and pleading a cognizable cause of action.

Notably, the *Uzuegbunam* Court distinguished between the two plaintiffs, but, for both, focused upon redressability. In so doing, the Court addressed the different fact situations of the two plaintiffs. Neither Uzuegbunam nor Bradford could obtain injunctive relief. Both Uzuegbunam's and Bradford's only possible redressable damages were nominal damages.

Discussing in details Uzuegbunam's situation, the Court observed that Uzuegbunam had been directly confronted by campus police on two occasions and prevented from exercising religious speech. The actions of the campus policemen were condoned, and even required, by an official campus policy. Uzuegbunam was threatened with disciplinary action if he persisted with

his determination to speak on his chosen religious subject. Uzuegbunam further would suffer disciplinary action unless he spoke only at a certain designated place.

The Supreme Court reasoned that Uzuegbunam had suffered a ***completed violation*** of his constitutional religious rights. The Court's decision does not separately define "completed violation", but the term's definition[14] is discernable and fact specific. Clearly, the term embraces an inchoate versus an actual suffering of a constitutional violation, where a finder of fact can latch onto a harm for which a remedy may be crafted.

The *Uzuegbunam* Court viewed Bradford's circumstances differently. The Court did not have before it enough evidence to conclude that Bradford had suffered a completed violation of his constitutional rights. Accordingly, the Court stated:

> We do not decide whether Bradford can pursue nominal damages. Nominal damages go only to redressability and are unavailable where a plaintiff has failed to establish a past, completed injury. The District Court should determine in the first instance whether the enforcement against Uzuegbunam also violated Bradford's constitutional rights.

*Uzuegbunam*, 141 S. Ct. 792, 802, 209 L. Ed. 2d 94 (2021).

We now turn to the lawsuit *sub judice*. The key terms here are "redressability" and "past completed injury". The City contends that Benham's situation fails to establish a past, completed injury because: during the life of the Ordinances, from October 1, 2019, to November 16, 2020, Benham was not even in the State of Mississippi; so, during this time period, Benham did not attempt to protest at the JWHO clinic. He was not directly threatened with enforcement of the Ordinances. Benham further, during the life of the Ordinances, never observed others being prevented from engaging in restricted protected speech. Benham, therefore, cannot argue that enforcement against another individual also violated his own constitutional rights. Although

---

[14] The Petitioners' Memorandum Brief before the Supreme Court in this case regularly referred to "completed injury" as an element of damages but did not define the term.

Benham expressed specific intent to travel to the City, this court has before it no evidence (such as airplane tickets) to show that Benham altered any specific travel arrangements due to the Ordinances.

Benham's sole allegation in his Complaint was that his speech had been chilled by the enactment of the Ordinances, should he decide to visit the City at a later date. Benham's position is not bemuscled enough to overcome the strictures of mootness in this case. Benham's legal argument in support of his position is that chilled speech by itself is a realized constitutional injury as a matter of law, which overcomes mootness. Benham's position is undermined by the *Uzuegbunam* case.

## V.    CONCLUSION

The City of Jackson has repealed the Ordinances which Plaintiff challenged as unconstitutional. As a result of the repeal of the challenged Ordinances, Benham is left without an opportunity to seek declaratory or compensatory damages. This court has before it no evidence to suggest the City plans to re-enact said Ordinances. Benham cannot establish a past, completed injury under the facts sufficient to override the mootness issue. Accordingly, this court finds, as it must, that this lawsuit is moot.

**IT IS, THEREFORE, ORDERED that the Defendants'** *Motion to Dismiss as Moot* **[Docket no. 34] hereby is GRANTED.**

**IT IS FURTHER ORDERED that the Plaintiff's** *Motion for Preliminary Injunction* **[Docket no. 4] had been previously GRANTED at the November 12, 2020, hearing.**

**IT IS FURTHER ORDERED that the defendants' First Motion for Leave to File Supplement to Memorandum in Support [Docket no. 45] hereby is RETROACTIVELY GRANTED.**

**IT IS FINALLY ORDERED** that this lawsuit is **MOOT** and Plaintiff's Verified Complaint [Docket no. 1] is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 17th day of December, 2021.

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**