UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**PHILIP BENHAM**,

  Plaintiff,

vs.

**CITY OF JACKSON, MISSISSIPPI**
and **JAMES E. DAVIS,** in his official
capacity as Chief of Police for Jackson
Police Department,

  Defendants.

CASE NO.: 3:19-cv-911-HTW-LGI

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND EXPENSES**</u>

  On December 11, 2019, Plaintiff Philip Benham (Benham) filed a Verified Complaint in this matter (Doc. 1) against Defendants (referred to collectively as Jackson or City) challenging the constitutionality of Jackson Ordinance § 86-401, *et seq*. "Prohibiting Certain Activities Near Health Care Facilities." Along with this filing, Benham filed a motion for preliminary injunction (Doc. 4) asking this Court to enjoin Jackson from enforcing the ordinance against him so he could share his pro-life views on public ways outside of Jackson Women's Health Organization (JWHO). Jackson filed a response opposing Benham's motion for preliminary injunction and defended the constitutionality of its ordinance. (Doc. 14).

  Later, on April 23, 2020, the Court set a hearing date for the motion and requested parties provide additional briefing on whether Benham has standing to pursue his requested relief. On May 3, 2020, the parties filed their supplemental briefs. Benham also filed an affidavit confirming his intentions to engage in activities proscribed by § 86-401*, et. seq*. (Doc. 23-1).

  The Court held hearing on Benham's motion for preliminary injunction on May 6, 2020. During which time, the Court further sought a site visit at JWHO clinic property, which it subsequently conducted on June 8, 2020. Several months later, on November 6, 2020, the Court's chambers emailed

the parties apprising them the Court would issue a bench opinion or written opinion on November 11, 2020. Due to a federal holiday, the Court rescheduled the ruling for the following day, November 12, 2020.

On this day, November 12, 2020, the Court ruled on Benham's motion for preliminary injunction via bench opinion. (Doc. 52). The Court granted Benham's motion for preliminary injunction and enjoined Jackson from enforcing § 86-401, *et. seq*. (Doc. 52). The very next day, November 13, 2020, Jackson took affirmative steps to comply with the Court's ruling on the preliminary injunction. The City instructed its police department to refrain from enforcing the ordinance and took down signage relating to the ordinance. And Jackson began the process of repealing its ordinance, which it completed on a later date.

In light of these events, Jackson filed motion to dismiss Benham's cause of action. (Doc. 34). This Court, in ruling on the motion, by Order dated December 17, 2021, acknowledged that it had previously granted Benham's motion for preliminary injunction on November 12, 2020, Jackson refrained from applying the ordinance and eventually repealed it as a result, and granted Jackson's motion to dismiss on grounds that Benham's claims had become moot. (Doc. 52).

As the prevailing party in this action, under the authority of 42 U.S.C. § 1988, Benham brings his Motion for Attorney Fees and Expenses (MAF) seeking the amount of **$89,927.97.**

## ARGUMENT

Section 1988 provides this Court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." There are two separate elements for evaluating a fee request: I) whether the movant is a prevailing party and II) whether the requested fees are reasonable.

### I.     BENHAM IS PREVAILING PARTY

A plaintiff can obtain attorney fees and expenses under § 1988 without having a final judgment

2

in his favor. *Veazey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021). To qualify as a "prevailing party," the party seeking fees need just demonstrate some judicially sanctioned relief that materially alters the relationship between the parties. *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). And this feat can be accomplished by relief obtained while litigation is still pending. *Veazey*, 13 F.4th at 368-69. An interim order alone is sufficient to confer prevailing party status. *Id.* at 369. For this reason, a plaintiff qualifies as a prevailing party when he wins a preliminary injunction based on a finding of probable success on the merits and defendant subsequently moots the case in response to the preliminary injunction. *Dearmore v. City of Garland*, 519 F.3d 517, 524-26 (5th Cir. 2008). *Accord Veazey*, 13 F.4th at 371 (acknowledging this holding in *Dearmore*).

In awarding attorney fees and expenses for a preliminary injunction ruing, the Court need only confirm:

> [P]laintiff (1) [won] a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents plaintiff from obtaining final relief on the merits.

*Dearmore*, 519 F.3d at 524. *See Depriest v. Walnut Grove Correctional Auth.*, No. 3:10-cv-00663-CWR-FKB, 2017 WL 4228751 (S.D. Miss. Sept. 9, 2017) (applying *Dearmore* factors in awarding attorney fees). Benham easily meets these requisites mandated in the Fifth Circuit. He won a preliminary injunction on November 12, 2020 enjoining Jackson from enforcing § 86-401, *et. seq.* (Doc. 52, pp. 8, 9, 15, 16, 22). This injunction was based on probable success on the merits. (Doc. 52, p. 7). And Jackson, in direct response to the preliminary injunction ruling, refrained from applying the ordinance and took immediate steps to repeal it, preventing plaintiff from securing final relief on the merits. (Doc. 52, pp. 8, 15, 22). Benham is prevailing party.

## II. REQUESTED ATTORNEY FEES AND EXPENSES ARE REASONABLE

A prevailing party should recover reasonable amount of attorney fees *as a matter of course*.

*Kirchberg v. Feenstra*, 708 F.2s 991, 998 (5th Cir. 1983) (emphasis in original). The award encompasses attorney work for enforcing as well as securing the relief. *Depriest*, 2017 WL 4228751 at *3.

Prevailing parties are typically entitled to attorney fees calculated by a method known as the "lodestar." *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 552 (2010). The lodestar is derived by multiplying reasonable number of hours by reasonable hourly rates. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). Once the lodestar is established, the party opposing the motion bears the burden of showing the number of hours and/or rates are unreasonable. *Riddell v. Nat'l Democratic Party*, 545 F.Supp. 252, 259 (S.D. Miss. 1982), *aff'd in relevant part*, 712 F.2d 165 (5th Cir. 1983). There is "[a] strong presumption that the lodestar figure…represents a 'reasonable' fee." *Murphy v. Smith*, 138 S.Ct. 784, 789 (2018) (citation omitted); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). However, the Court may adjust the lodestar – either upward or downward - in consideration of factors specified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (1974) abrogated on other grounds, *Blanchard*, 489 U.S. at 92-93,[1] depending on the circumstances of the case. *Trout Point Lodge Ltd. v. Handshoe*, No. 1:12CV90-LG-JMR, 2013 WL 6524650, at *5-6 (S.D. Miss. Dec. 11, 2013) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). A reasonable fee award also encompasses out-of-pocket expenses reasonably incurred in litigating the action. *Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990).

An evaluation of the lodestar and other relevant factors reveal Benham should receive the fees and expenses he seeks in this motion.

---

[1] The *Johnson* factors consist of the following: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill needed to perform the legal services properly; (4) preclusion of other employment; (5) the customary fee; (6) fixed or contingent fee; (7) time limitations; (8) the time involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. *Id.* at 717-19.

4

### A. Benham Seeks Reasonable Number of Hours

The hours Benham pursues with his motion, as adjusted by the exercise of billing judgment, amounts to 218.8 hours for Nathan W. Kellum and 33.10 hours for Mark Anthony Mangini, for a total number of 251.90 lawyer hours.

Arriving at the lodestar, a plaintiff is to prove lawyer hours were reasonably expended through accurate time records. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Benham offers this evidence, supplying a detailed billing statement from the Center for Religious Expression (CRE) containing time entries for attorneys Kellum and Mangini, divulging the work they performed in the case. (Time Statement, attached as Ex. "C" to MAF). As verified by both lawyers, the time entries set out in the time statement are accurate and reflect time recorded contemporaneously as they did the work. (*See* Declaration of Nathan W. Kellum, ¶¶ 30-31, attached as Ex. "A" to MAF; Declaration of Mark Anthony Mangini, ¶¶ 8-9, attached as Ex. "B" to MAF). Kellum attests that he considers, in his professional judgment, every task shown in the time statement as necessary for the prosecution of the case. (Ex. A, ¶ 32). Mangini does the same. (Ex. B, ¶ 9). Kellum disavows any unnecessary or duplicative tasks by either him or Mangini. (Ex. A, ¶ 33). In an attempt to avoid duplicative and unnecessary work, instead of two lawyers, CRE sent only one lawyer to every appearance in this case, even though Jackson regularly had two or three lawyers present at such appearances. (Ex. A, ¶ 34). Kellum also excised any time entry involving communication between lawyers from the time statement. (Ex. A, ¶ 31). Moreover, Kellum cut a significant number of hours from his and Mangini's time following the exercise of billing judgment. (Ex. "A." ¶¶ 35-39).

The hours of the attorneys (as adjusted) in the motion are proper. They reflect thoughtful exercise of billing judgment and only seek hours reasonably expended to secure a successful result in this litigation.

### 1. Billing judgment was exercised

Much of Kellum's and Mangini's time never made it to the time statement. (Ex. C). They do not account for any conversations between themselves, nor do their entries reflect duplication of efforts in any other way. Additionally, CRE's billing statement (Ex. C) sets out "adjusted time" signaling the exercise of billing judgment to eliminate any recorded time deemed "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Counsel eliminated all time that could have been performed by a legal assistant and discounted travel time by half. (Ex. A, ¶ 37). Further, counsel eliminated redundant and/or excessive hours. (Ex. A, ¶ 36). Overall, a total of 27.3 hours have been purged in the exercise of billing judgment from a time statement that had already discounted considerable attorney time. (Ex. A, ¶ 39). The self-applied deductions leave 218.80 hours for Kellum and 33.10 hours for Mangini, for a grand total of 251.90 hours sought with this motion.

Counsel has verified the reasonableness of these hours and the tasks performed in the prosecution of the case. (Ex. A, ¶¶ 30-39). Stephen Crampton, a Mississippi attorney who is admitted to practice in Southern District of Mississippi and has a significant amount of experience in civil rights litigation in this district and others, has reviewed the pleadings and briefings in this case and confirms that the number of hours spent by counsel was reasonable under the circumstances and that counsel exercised appropriate billing judgment in his reductions. (Declaration of Stephen Crampton, ¶¶ 4-7, 10-12, attached as Ex. "E" to MAF).

### 2. Excellent result justifies hours sought

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. To be sure, Benham obtained an outstanding result, securing the core relief he sought in this litigation: the right to share his beliefs on public ways outside of JWHO without the restraints of § 86-401, *et. seq*.

"[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. It is the result of the litigation that matters. 1 Alba Conte, *Attorney Fee Awards* § 4:18 (3d ed. 2013) ("[I]n successful litigation, fees should not ordinarily be reduced for unsuccessful procedural, discovery, or other motions."). *See Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (holding plaintiffs entitled to time spent on unsuccessful summary judgment motion when they ultimately succeeded on some claims therein, and all claims arose from common core of facts); *Cruz v. Town of Cicero*, 275 F.3d 579, 592 (7th Cir. 2001) (dismissing argument that plaintiff could not obtain fees for unsuccessful preliminary injunction motion, court remarked that "it is the ultimate outcome of the litigation that determines whether a plaintiff is a prevailing party, not his or her success as to each motion filed in the case"); *Kitchen v. TTX Co.*, No. 97 C 5271, 2001 WL 40803, at *3 (N.D. Ill. Jan. 17, 2001) (declining to exclude time spent on unsuccessful preliminary injunction motion because "[a] losing argument in support of a successful claim for relief is fully compensable time.") (citation omitted). All things considered, all of CRE's adjusted hours (251.90) are reasonable and compensable in this matter.

### B. Benham Seeks Reasonable Hourly Rates

Benham pursues hourly rates of $375 for Kellum and $200 for Mangini.

Reasonable hourly rates are "the prevailing market rates in the relevant community…." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant legal community is the location where the district court sits. *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). And "prevailing market rates" are determined by comparing the hourly rates of attorneys with similar experience, skill, and reputation in that relevant community. *Blum*, 465 U.S. at 895 & n. 11. This showing is ordinarily made with declarations from other attorneys practicing in the relevant community. *Tollet*, 285 F.3d at 368.

The hourly rates Benham seeks - $375 per hour for Kellum and $200 for Mangini – are consistent with the prevailing market rates in Jackson and the Southern District of Mississippi for like attorneys. Scott Newton, an attorney familiar with First Amendment claims and a great deal of litigation experience in the district, attests that senior litigators in the district regularly obtain rates of $400 or greater, with Newton charging $525 per hour himself. (Declaration of Scott Newton, ¶ 8 attached as Ex. "D" to MAF). Newton verifies that Kellum's $375 hourly rate is not only reasonable in this market, but lower than anticipated, given Kellum's experience and expertise in civil rights litigation. (Ex. D, ¶¶ 9, 12). He also confirms Mangini's $200 hourly rate is reasonable in this jurisdiction for an attorney practicing 7 years. (Ex. D, ¶¶ 13, 14). Crampton further substantiates the hourly rates of Kellum and Mangini. He is an experienced lawyer in civil rights litigation in the Southern District and his usual hourly rate for this type of work is $425 per her hour. (Ex. E, ¶¶ 4-7). He knows Kellum, is familiar with his work and that of Mangini's, and confirms that their sought-after hourly rates are reasonable in Jackson and the Southern District. (Ex. E, ¶¶ 8-9).

Additionally, recent decisions in this district confirm the reasonableness of these hourly rates for Kellum and Mangini in the Southern District. *See, e.g., Pickett v. Mississippi Bd. of Health,* No. 2:18-CV-214-KS-JCG, 2021 WL 4979009, at *4 (S.D. Miss. Oct. 26, 2021) (finding hourly rate of $400 appropriate for attorney with significant experience in Title VII litigation); *Thomas v. Reeves*, No. 3:18-CV-441-CWR-FKB, 2021 WL 517038, at * 4-5 (S.D. Miss. Feb. 11, 2021) (upholding hourly rates of $450 and $425 for attorney with decades of experience in civil rights litigation, $275 for attorney with 8 years' experience, and $250 for attorney with 4 years' experience); *Jackson Women's Health Organization v. Currier,* No. 3:12-CV-436-DBJ-FKB, 2019 WL 418550 at * 6-7 (S.D. Feb. 1, 2019) (granting hourly rates of $550 and $375 to lawyers with over 20 or more years of experience and $225 to associates with minimal experience); *Mosley v. Nordquist*, No. 3:13-CV-161-LG-JCG, 2016 WL

5794480, at *6-7 (S.D. Miss. Sept. 30, 2016) (approving hourly rates between $360 and $435 for attorneys with over seventeen years' experience, and rates between $210 and $230 for third-year associates); *Anderson v. City of McComb*, No. 5:13CV263TSL-MTP, 2016 WL 4261777, at *3 (S.D. Miss. Apr. 4, 2016) (approving $375 hourly rate for attorney with nearly 30 years' experience); *Wells Fargo Bank, N.A. v. Quick Clean, LLC*, No. 3:13CV519-HSO-RHW, 2015 WL 11004955, at *2 (S.D. Miss. May 22, 2015) (holding hourly rates up to $400 "are not facially unreasonable"); *Rigsby*, 2014 WL 691500, at *14, *17 (finding hourly rates of $375 and $400 reasonable for attorneys with over 20 years' experience). *See also Rigsby v. State Farm Fire and Co.*, No. 1:06-CV-433-HSO_RHW, 2014 WL 691500, at *14 (customarily and reasonable rates currently charged by litigation partners in Mississippi firms and/or regional firms with offices in Mississippi are in the $400-$500 range").

Benham's requested hourly rates are reasonable in Jackson and the Southern District of Mississippi.

### C. *Johnson* Factors Substantiate the Lodestar

Consideration of the twelve *Johnson* factors undergird the lodestar calculation.

#### 1. Time and Labor Required

The attorney hours sought, 218.80 hours for Kellum and 33.10 hours for Mangini, represent work essential for obtaining meaningful relief for Benham in this cause. Kellum verifies the accuracy of these hours and the need for them and attests to voluntary elimination of hours in the exercise of billing judgment. (Ex. A, ¶¶ 30-39). Kellum further verifies the reasonableness of the hours, set out in the task-based itemized billing statements, demonstrating their reductions of time. (Ex. A, ¶¶ 38-39; Ex. C). Mangini also verifies the accuracy of and need for his time. (Ex. B, ¶¶ 8-9). Crampton confirms the reasonableness of the hours for both lawyers. (Ex. E, ¶¶ 10-12).

#### 2. Novelty and Difficulty of Questions Presented

The issues before the Court are novel because the ordinance challenged in this litigation is novel, with no direct Supreme Court or Fifth Circuit precedent to follow. While other jurisdictions had considered and upheld either a bubble zone, or a buffer zone, or a quiet zone in front of an abortion clinic, no court had previously addressed the combination of all three restrictions in one ordinance like that set out in §86-401, *et. seq*. Also, the challenge to this law implicated competing interests, requiring the Court to draw a balance between the interests of individuals who wish to avoid unwanted noise and contact in public spaces and the interests of individuals who wish to engage in free speech in and around these spaces. The nuanced legal arguments presented in this matter support the instant request for attorney fees.

### 3. Level of Skill Required to Perform Legal Services Properly

This matter was a difficult and unusual free speech case challenging a city ordinance vigorously defended by capable attorneys. Achieving a positive result required a certain level of attorney skill and expertise. Kellum has considerable experience in handling First Amendment and free speech cases in various contexts, which proved valuable in the favorable outcome for Benham.

### 4. Preclusion of other Employment

Free speech cases can consume a great deal of time, being fact-specific, demanding attention to detail, which tends to monopolize counsel's calendar and time. This case was no exception. In fact, due to the uniqueness of the restriction at hand, even more attention than usual was required. Moreover, the urgent need for prompt relief, and constraints imposed by litigation deadlines, obliged counsel to set aside substantial blocks of time during the course of the litigation. (Ex. A, ¶¶ 12-14). CRE, where counsel works, is a non-profit legal entity that provides *pro bono* legal services to individuals and entities across the nation. For most of this litigation, CRE only had two full-time attorneys on staff, and currently has just one. Fielding more requests for help than counsel can possibly handle, counsel had to

10

decline other cases to successfully prosecute this case.

### 5. Customary Fee for Like Work

Benham seeks hourly rates of $375 for Kellum and $200 for Mangini. These rates, as demonstrated by the cases in the Southern District of Mississippi cited herein, fall within the reasonable rates of attorneys with comparable skill and experience in civil rights litigation that practice in Jackson and the Southern District of Mississippi.

### 6. Contingent Nature of Attorney Work

Compensation for attorney work in this case was and has always been contingent on Benham prevailing in this matter. Had Benham not prevailed, his attorneys' fees would go uncompensated. Benham agreed to pursue attorney fees and expenses under 42 U.S.C. § 1988 in this case (Ex. A, ¶¶ 16-17) and counsel relied on this understanding in agreeing to accept the case. (Ex. A, ¶¶ 18-19).

### 7. Time Limitations Imposed by Client and Circumstances

Benham had plans to go to public ways outside of JWHO to share his pro-life message soon after Jackson passed its ordinance prohibiting his expressive activity. The threat to his freedoms was immediate and ongoing, obliging Benham's counsel to file pleadings as expeditiously as possible, including a motion for preliminary injunction early in the litigation. This effort required a lot of legal research, detailed pleadings, sufficient evidence, and substantial briefing, all of which had to be done in a timely manner to be of any use to Benham.

### 8. Amount in Controversy and Results Obtained

This case was not about money or damages but the need for timely relief that would allow Benham an opportunity to share his message in traditional public fora. Benham did not seek compensatory damages, nor was he entitled to receive any. But through the preliminary injunction, and subsequent repeal of the ordinance, he obtained all the practical relief he sought in this litigation.

### 9. Experience, Reputation, and Ability of Attorneys

The declarations filed in support of Benham's motion for attorney fees establish the experience, reputation, and ability of Benham's attorneys, a value that is "reflected in the reasonable hourly rate." *Blum*, 465 U.S. at 899. Kellum and Mangini have detailed their experience in constitutional law and in federal court. (Ex. A, ¶¶ 3-11; Ex. B, ¶¶ 3-7). Newton and Crampton have verified the propriety of the hourly rates Benham seeks for Kellum and Mangini. (Ex. D, ¶¶ 12-14; Ex. E, ¶ 9).

### 10. Undesirability of the Case in the Legal Community

This case was not a desirable one for lawyers in the Southern District legal community. Few attorneys are familiar with the First Amendment free speech area of the law and even fewer are willing take on such cases with no guarantee of payment or prospect of obtaining a percentage of substantial damages. "In general, civil rights litigation is seen as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." *James v. City of Montgomery*, No. 94-T-264-N, 1995 WL 271138, at *3 (M.D. Ala. Apr. 19, 1995) (citation and internal quotation marks omitted). CRE counsel's willingness to accept the case under these circumstances substantiates the fee request.

### 11. Nature and Length of Professional Relationship with Client

In civil rights actions, the nature and length of the professional relationship with a client does not factor into the fee analysis.

### 12. Fee Awards in Similar Cases

Due to the importance of constitutional rights, federal courts routinely award appropriate fee amounts to litigants who vindicate these rights, even though their relief is not monetary in nature. *See Thomas*, 2021 WL 517038 at *12 (awarding $567,909.07 in civil rights claim); *Watkins v. Fordice*, 807 F. Supp. 406, 420 (S.D. Miss. 1992) (awarding $198,688.23 in civil rights claim). The fee request

before this Court is in line with the amounts awarded in other successful civil rights cases.

    **D.**    **Expenses are Reasonable**

In this motion, Benham also seeks reimbursement for itemized litigation-related expenses that was incurred in litigating this matter. A prevailing party may recover out-of-pocket expenses normally charged to a fee-paying client. *Assoc. Builders & Contractors of La., Inc.,* 919 F.2d at 380. In this vein, Benham is entitled to recover the expenses reasonably incurred by his attorneys in pursuing this action, as itemized in Ex. C, and totaling $1,257.97 in this cause.

## CONCLUSION

For reasons set forth herein, Plaintiff Phillip Benham respectfully requests this Court grant his Motion for Attorney Fees and Expenses, an amount totaling **$89,927.27.**

Respectfully submitted this 5th day of January, 2022.

s/Nathan W. Kellum  
NATHAN W. KELLUM  
TN BAR # 13482; MS BAR # 8813  
Center for Religious Expression  
699 Oakleaf Office Lane, Suite 107  
Memphis, TN  38117  
(901) 684-5485 – Telephone  
(901) 684-5499 – Fax  

Attorney for Plaintiff Phillip Benham

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this date filed electronically with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent electronically to all counsel of record by operation of the Court's CM/ECF system, signed this 5th day of January, 2022.

                                        s/Nathan W. Kellum  
                                        Attorney for Plaintiff Phillip Benham