**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**PHILIP BENHAM**                                                                                **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 3:19-CV-911-HTW-LGI**

**CITY OF JACKSON, MISSISSIPPI, and**
**JAMES E. DAVIS, in his official capacity as**
**Chief of Police for Jackson Police**
**Department**                                                                          **DEFENDANTS**

---

## ORDER

---

BEFORE THIS COURT is the *Motion for Attorney's Fees and Expenses* **[Docket no. 54]** filed on January 5, 2022, by Plaintiff Philip Benham ("Plaintiff" or "Benham"). Plaintiff seeks $89,927.97 in attorneys' fees and expenses. In support of his motion, Plaintiff has submitted the following documents: declaration of Attorney Nathan W. Kellum [Docket no. 54-1]; declaration of Attorney Mark Anthony Mangini [Docket no. 54-2], both of whom are employed by the Center For Religious Expression (Memphis, Tennessee); an itemized fee bill reflecting time entries for Attorneys Nathan W. Kellum and Mark Anthony Mangini [Docket no. 54-3]; declarations of Attorney J. Scott Newton and Attorney Stephon M. Crampton [Docket nos. 54-4 and 54-5]; and a supporting memorandum brief [Docket no. 56].

Defendants City of Jackson ("the City") and Chief of Police James E. Davis ("Davis") (hereinafter collectively referred to as "Defendants") object to the award of any requested attorneys' fees [Docket nos. 60 and 61].

After a careful review of the submissions of the parties, the relevant legal precedent, and the oral arguments of the parties, this court is convinced that Plaintiffs' Motion for Attorney's Fees and Expenses should be granted, but with a reduction. Below, this court sets out the facts and law upon which this court bases its rulings.

## I.     PROCEDURAL HISTORY

On December 11, 2019, Benham filed his Verified Complaint against the Defendants under Title 42 U.S.C. § 1983[1],  challenging the constitutionality of a series of City ordinances, §§ 86-401, *et seq* (hereinafter referred to collectively as the "Ordinances").  The Ordinances, entitled "Prohibiting Certain Activities Near Health Care Facilities", banned the following actions:

(1) Persons are prohibited from approaching other persons to protest or engage in conversation with that person within one hundred (100) feet of the entrance to any health care facility closer than eight (8) feet without consent of that person. *See* JACKSON, MISS., CODE § 86-403;

 (2) Persons are also prohibited from protesting within fifteen (15) feet of the entrance of any health care facility. *See* § JACKSON, MISS., CODE 86-404; and

(3) Persons are prohibited from shouting or using voice amplification devices within one hundred (100) feet of the entrance to any health care facility. *See* JACKSON, MISS., CODE § 86-405.

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C.A. § 1983 (West)

The Ordinances were to be enforceable only during the operating hours of a health care facility. *See* JACKSON, MISS., CODE § 86-406. Violation of the Ordinances amounted to a misdemeanor "punishable by a fine of not more than $1,000.00, or by imprisonment for not more than 90 days, or both." *See* JACKSON, MISS., CODE § 86-409.

Benham's Complaint alleged that the City's insistence on enforcing the Ordinances chilled his speech activities and deterred him from traveling to Jackson, Mississippi, to protest outside of the Jackson Women's Health Organization ("JWHO"), the only abortion clinic in the State of Mississippi.  Benham, by way of his Complaint, sought declaratory and injunctive relief, nominal damages, and attorneys' fees and costs. [Docket no. 1].

On the same day, December 11, 2019, Benham also filed a Motion for Preliminary Injunction, seeking to enjoin the City from enforcing the Ordinances against him [Docket no. 4]. Defendants answered Benham's Complaint on January 7, 2020, [Docket no. 12] and submitted their response to Benham's Motion for a Preliminary Injunction on January 11, 2020 [Docket no. 14].

On May 6, 2020, this court held an in-person hearing on Benham's motion for preliminary injunction. During that hearing, this court acknowledged receipt of supplemental briefing from the parties, heard oral arguments, and granted the parties permission to submit additional legal authority. This court also announced its interest in conducting an outside-site visit to the JWHO, which site visit took place on June 8, 2020.

On Thursday, November 12, 2020, this court issued its ruling on the motion for preliminary injunction by reading its bench opinion to the parties during a telephonic hearing. Because of a scheduling discrepancy, no court reporter was available to transcribe the telephonic

proceeding; however, in view of the previous delays, this court decided to issue its ruling as scheduled. No party objected to the absence of a court reporter.

The court's bench opinion provided, as follows: this court orally granted Benham's Preliminary Injunction Motion and enjoined the City from enforcing § 86-401, *et. seq*. As part of its oral recitation of its bench opinion, this court recited the underlying facts of the case; the standard for evaluating a motion for preliminary injunction; an in-depth legal analysis on standing; ripeness; the questioned constitutionality of the Ordinances; and the grounds for granting the preliminary injunction.

The court, in granting the motion for preliminary injunction, found speech to be a protected activity, public sidewalks to be a public forum, and the Ordinances to be content-neutral. The court applied the intermediate standard of scrutiny. This court explained that a narrowly-tailored restriction (though not the least restrictive), with alternative channels of communication available, is satisfied if it does not burden more speech than necessary to further the legitimate government interest. The three overlapping restrictions[2] of the Ordinances were not narrowly tailored, said the court, and would not, therefore, pass constitutional muster as to the preliminary injunction.

At the conclusion of its bench opinion, this court informed the parties that its verbal ruling had been read from a written Opinion that it would soon file. No party objected to this procedure.

During this November 12, 2020, telephonic conference, this court asked counsel for the Defendants whether they wished to go forward with a trial on the case as a whole and obtain a trial date in lieu of appealing this court's oral ruling regarding the preliminary injunction. Defendants' counsel requested additional time to confer before responding to the court's inquiry.

---

[2] See Page 1 *supra*.

On November 13, 2020, the next day, the City instructed its police department to refrain from enforcing the Ordinances and took down signage relating to the ordinance. On November 16, 2020, the City Council called a special meeting. The Council, as the legislative body for the City of Jackson, determined that the subject Ordinances, sections 86-401 through 86-409 of the Jackson Code of Ordinances, should be repealed in their entirety, effective immediately. The Council voted unanimously to approve the Repealing Ordinance, based upon the quorum present. The City had not informed this court nor Benham's counsel of its intentions to repeal the Ordinances.

On November 16, 2020, the same day, before this court had the opportunity to file the written version of its bench opinion, the City filed a motion to dismiss Benham's Complaint. [Docket no. 34]. The City confirmed that it had repealed § 86-401, *et. seq*. This change in circumstances, argued the City, effectively rendered Benham's entire case moot.

Benham, on the same day, filed his Notice of Statement of Plaintiff's Position [Docket no. 36], alerting this court of his concerns, and confirming his desire to respond to the motion to dismiss.

On November 18, 2020, this court held another telephonic hearing to discuss these recent events. During the telephonic hearing, the City's counsel advised that the City was seeking dismissal of the case due to the repeal and alleged mootness of the lawsuit. Benham's counsel confirmed that Benham opposed the motion and wished to file a written response to the City's motion to dismiss. This court again reminded the parties that it had granted Benham's motion for preliminary injunction on November 12, 2020. It also informed the parties that the City was to inform the court whether the City wanted to proceed with a trial or appeal the ruling granting

Benham's motion for preliminary injunction. This court stated that it would issue a briefing schedule on the defendants' motion to dismiss based upon mootness[3].

On April 21, 2021, this court conducted a telephonic hearing to hear oral arguments on the issue of mootness and entered its Order [Docket no. 49] directing Benham, if he so chose, to submit a response to Defendants' most recent memorandum brief addressing the impact of a recent United States Supreme Court case, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 794 (2021).

*Uzuegbunam v. Preczewski* dealt with the following factual scenario: one of the plaintiffs, Chike Uzuegbunam (hereinafter referred to as "Uzuegbunam") was an Evangelical Christian whose beliefs include sharing his faith. In 2016, Uzuegbunam was a student enrolled at Georgia Gwinnett College, a public college located in Lawrenceville, Georgia. Uzuegbunam began engaging in conversations with other students and handed out literature on an outdoor plaza where students often gathered. Soon after Uzuegbunam began his evangelical activities, a campus police officer informed him that campus policy forbade his distribution of the written religion materials in that specific area and instructed him to stop.

Uzuegbunam next visited the Director of the Office of Student Integrity to learn more about the campus policy. The Director of the Office of Student Integrity informed Uzuegbunam he could not distribute nor speak about religion outside of two (2) designated "free speech expression areas" – comprising 0.0015 percent of the campus. The Director further informed Uzuegbuman that he had to obtain a permit to conduct his planned speech activities in the designated areas.

---

[3] This briefing schedule was outlined on November 20, 2020 during a telephonic conference. During this conference, this court stated that it would submit a stipulation to the parties as to the proceedings that occurred at the telephonic conference on November 12, 2020, during which this court announced its opinion granting the plaintiff's motion for preliminary injunction

Uzuegbunam, thereafter, obtained a permit to express his religious views. Shortly after he began orating during his allotted time for his permit-allowed religious speech, another campus police officer approached Uzuegbunam and instructed him to stop his speech because students had complained. Pursuant to the campus policy, explained the police officer, Uzuegbunam was prohibited from using the free speech zone to say anything that "disturbs the peace and/or comfort of person(s)." The campus police officer, abiding by this policy, threatened to take disciplinary action against Uzuegbunam if he continued his "discordant" speech.

The *Uzuegbunam* lawsuit featured a second student, Joseph Bradford ("Bradford"), who shared Uzuegbunam's faith. Bradford, too, was a plaintiff similarly complaining that the Defendants had violated his religious speech rights pursuant to the campus policies above discussed. Bradford alleged that, although the college's policies had not been applied against him directly, his religious speech had been chilled because the college's actions toward Uzuegbunam deterred him (Bradford) from speaking about his religion.

The two plaintiffs filed a lawsuit arguing that the college's policies had violated their First Amendment right to Free Speech, seeking injunctive relief and nominal damages. Before the district court could reach the merits of plaintiffs' case, however, the college chose to discontinue the challenged policies. The college sought dismissal on the ground that the policy changes had left the plaintiffs without standing to sue. The plaintiffs agreed that the policy changes rendered their request for injunctive relief moot, but disputed whether plaintiffs still had standing to maintain their suit based on their claim for nominal damages.

The United States Supreme Court held: "[b]ecause nominal damages were available at common law in analogous circumstances, we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a ***completed***

*violation* of a legal right." *Uzuegbunam*, 141 S. Ct. 792, 801–02, 209 L. Ed. 2d 94 (2021) (emphasis added). The Court stated that "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages. They are, instead, the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages." *Id*. at 209.

The Court explained, however, that a plaintiff's request for nominal damages does not automatically guarantee entry to federal courts. In addition to redressability, stated the Court, the plaintiff must establish all other relevant requirements, such as standing and pleading a cognizable cause of action.

Uzuegbunam was threatened with disciplinary action if he persisted with his determination to speak on his chosen religious subject. Uzuegbunam further would suffer disciplinary action unless he spoke only at a certain designated place. The Supreme Court, therefore, reasoned that Uzuegbunam had suffered a ***completed violation*** of his constitutional religious rights. The Court's decision did not separately define "completed violation", but stated that the term's definition is discernable and fact specific.

The *Uzuegbunam* Court viewed Bradford's circumstances differently. The Court did not have before it enough evidence to conclude that Bradford had suffered a completed violation of his constitutional rights. Accordingly, the Court stated:

> We do not decide whether Bradford can pursue nominal damages. Nominal damages go only to redressability and are unavailable where a plaintiff has failed to establish a past, completed injury. The District Court should determine in the first instance whether the enforcement against Uzuegbunam also violated Bradford's constitutional rights.

*Uzuegbunam*, 141 S. Ct. 792, 802, 209 L. Ed. 2d 94 (2021).

On December 17, 2021, this court entered its Order dismissing Benham's Complaint as moot. [Docket no. 52]. This court found that as a result of the repeal of the challenged Ordinances, Benham was left without an opportunity to seek declaratory or compensatory damages. This court had before it no evidence to suggest the City planned to re-enact said Ordinances; therefore, Benham could not establish a past, completed injury under the facts sufficient to override the mootness issue under *Uzuegbunam.*

This court distinguished Benham's situation from Uzuegbunam's and found that Benham had failed to establish a past, completed injury because: during the life of the Ordinances, from October 1, 2019, to November 16, 2020, Benham was not even in the State of Mississippi; so, during this time period, Benham did not attempt to protest at the JWHO clinic. He was not directly threatened with enforcement of the Ordinances. Benham further, during the life of the Ordinances, never observed others being prevented from engaging in restricted protected speech. Benham, therefore, cannot argue that enforcement against another individual also violated his own constitutional rights. Although Benham expressed specific intent to travel to the City, this court has before it no evidence (such as airplane tickets) to show that Benham altered any specific travel arrangements due to the Ordinances.

In its Order, however, this court acknowledged it previously had granted Benham's motion for preliminary injunction by way of its bench opinion, issued on November 12, 2020. This court reiterated that during the November 12, 2020, telephonic hearings, this court had: announced its intention to issue its written ruling on the Plaintiff's motion for preliminary injunction; read to the parties its findings of fact and conclusions of law; and expressly had stated that the motion for preliminary injunction had been granted. [Docket no. 52].

Further, this court noted in its Order that on November 13, 2020, the day after the court issued its bench opinion, the City took affirmative steps to comply with this court's injunction. The City instructed its police department to refrain from enforcing the Ordinances and took down signage related to the Ordinances. The City then repealed the Ordinances.

## II.     BENHAM'S MOTION FOR ATTORNEYS' FEES

Benham now requests $89,927.97 in attorney's fees and expenses under 42 U.S.C. § 1988(b)[4].   Benham asserts that because this court granted his motion for a preliminary injunction, he is the "prevailing party" in this action and, therefore, entitled to attorneys' fees and costs.

Defendants, contrariwise, argue that Benham is not entitled to any attorneys' fees because he is not the prevailing party in this action. Defendants assert Benham suffered no damages regarding his travel plans; was never arrested nor witnessed an arrest; and the Ordinances were never enforced against Benham. [Docket no. 61, p. 6].

Further, say Defendants, Plaintiff's Verified Complaint seeking attorneys' fees was dismissed, and the preliminary injunction never sought attorneys' fees; thus, Benham is procedurally barred from an award of attorneys' fees.

Defendants also state that Benham is not the prevailing party because "…the City never knew the court actually ordered an enforceable preliminary injunction prior to the City's repeal

---

[4] **(b) Attorney's fees**
In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction. 42 U.S.C.A. § 1988 (West)

of the Ordinances on November 16, 2020, nor did the preliminary advisory oral statement have any legal effect." [Docket no. 61, p. 8].

Finally, Defendants contend that even if this court finds that Benham is entitled to attorneys' fees, the requested amount is not reasonable under the circumstances. Defendants argue that Benham's attorneys specialize in anti-abortion maters; therefore, they did not have to learn a new area of law. This lack of difficulty, say Defendants, should weigh against Plaintiff in any award of attorney's fees.   Defendants ask this court to decline to award attorneys' fees to Benham or, alternatively, to limit the amount of fees and expenses awarded.

### III.   LEGAL ANALYSIS

Under the authority of § 1988(b)[5], this court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." This court, accordingly, must analyze: 1) whether the movant is a prevailing party; and 2) whether the requested fees are reasonable under the facts of this case.

### A.  *Prevailing Party*

To qualify as a "prevailing party," the party seeking fees need just demonstrate some judicially sanctioned relief that materially alters the relationship between the parties. *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). Importantly, this relief need not be awarded at the conclusion of the case—a prevailing party is simply "one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite*[6] or at the conclusion of the litigation." *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir. 2015).

---

[5] See Footnote 3. This statute authorizes an award of attorneys' fees to a "prevailing party" in an action to enforce the provisions of certain federal statutes, including 42 U.S.C. § 1983.

[6] *Pendente lite* is a Latin term meaning "awaiting the litigation".

The United States Court of Appeals for the Fifth Circuit has provided guidance when awarding attorneys' fees and expenses for a preliminary injunction ruling, as follows: the court must find that the plaintiff: (1) [won] a preliminary injunction; (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff; (3) that caused the defendant to moot the action, which prevents plaintiff from obtaining final relief on the merits. *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008).

Defendants argue that "the City never knew the court actually ordered an enforceable preliminary injunction prior to the City's repeal of the Ordinances on November 16, 2020, nor did the preliminary advisory oral statement have any legal effect." However, as stated *supra* and discussed thoroughly in this court's previous Order granting the Defendants' Motion to Dismiss, this court expressly granted Plaintiff's preliminary injunction on November 12, 2020.  Further, on November 13, 2020, the day after this court granted the preliminary injunction, the City took affirmative steps to comply with this court's injunction. This court confirms, once again, that this court ruled in Benham's favor on the merits of his motion for a preliminary injunction against the Defendants.

The issue before this court now is whether Benham qualifies as a "prevailing party" under § 1988(b) when he obtained the preliminary injunction after this court made an unambiguous finding of probable success on the merits of his claim. The Defendants immediately repealed the Ordinances and informed Davis not to enforce the Ordinances, in this courts's eye, in response to the court's preliminary injunction.

This court has broad discretion to award attorneys' fees under §1988(b). *Hopwood v. Texas,* 236 F.3d 256, 277 (5th Cir. 2000).  This court looks to *Dearmore v. City of Garland*,

wherein the Fifth Circuit analyzed whether the plaintiff, a property owner, was the prevailing party entitled to attorneys' fees under §1988(b).

In *Dearmore*, the plaintiff, Dearmore, brought a civil rights action against the City of Garland, Texas, challenging a housing code provision permitting warrantless inspections of certain residents ("the Ordinance").  Dearmore's amended complaint alleged that the Ordinance violated his rights under the United States Constitution, and sought a declaratory judgment, injunctive relief, and attorneys' fees and costs. Dearmore also requested the district court to grant a preliminary injunction, seeking immediately to enjoin the City from enforcing the Ordinance.

The district court granted Dearmore's request for a preliminary injunction. Subsequently, approximately twelve days later, the City amended the Ordinance, removing the applicable provisions, and filed a motion to dismiss Dearmore's lawsuit as moot, which Dearmore did not oppose. The district court granted the City's motion to dismiss; however, the court determined that plaintiff was a prevailing party to the extent that the court declared the applicable section of the Ordinance to be unconstitutional. Plaintiff Dearmore, therefore, was entitled to reasonable attorneys' fees on his claim.  *Dearmore v. City of Garland*, No. CIV.A. 305CV1231L, 2005 WL 3276384, at *1 (N.D. Tex. Nov. 30, 2005).

The Fifth Circuit affirmed the district court's award of attorneys' fees. The Court, in support of its holding, noted that the merits-based preliminary injunction, coupled with the City's mooting of the action in direct response to the injunction, caused a material alteration in the legal relationship between the parties. The Court stated further "that Dearmore never obtained a final judgment on the merits does not affect [its] ruling, as a final judgment is not required." *Dearmore*, 519 F.3d at 526.

The *Dearmore* Court found that when the district court granted Dearmore's preliminary injunction, it provided Dearmore with the interim judicial relief that he had requested—it blocked the City from enforcing the applicable portion of the Ordinance. The City, because of this injunction, could not conduct the enjoined action, namely, warrantless searches, or impose criminal penalties for noncompliance under the offending provision of the Ordinance. When the City modified its behavior in direct response to the injunction and mooted the case, it ultimately provided Dearmore with his desired result. Importantly, noted the Court, Dearmore was never subjected to the contested Ordinance, which was the "very relief he sought when he initiated the lawsuit against the City". *Dearmore*, 519 F.3d at 526.

This court finds that Benham has met the requisites mandated by the Fifth Circuit, making him a prevailing party. Benham won a preliminary injunction on November 12, 2020, enjoining Jackson from enforcing § 86-401, *et. seq*. This injunction was based on probable success on the merits; and the City, in direct response to the preliminary injunction ruling, refrained from applying the Ordinances and took immediate steps to repeal them, thus preventing Benham from securing final relief on the merits. Benham, therefore, is prevailing party under the authority of § 1988(b).

### B. *Reasonable Attorneys' Fees*

Next, this court must determine whether Benham's requested fees are reasonable under the circumstances of this case. In determining the appropriateness of the amount of attorneys' fee awards, the court must engage in a two-step process  as described in *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The first step requires this court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the court must multiply the reasonable hours by the reasonable hourly rates." *La. Power &*

*Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir.1995).   This step is what is known as the "lodestar calculation." *Id.*

The lodestar amount is presumed to be reasonable; but it can be adjusted upward or downward by the court based on certain factors. *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714 (5th Cir.1974).   Determining whether this upward or downward adjustment should be made is the second step in determining the appropriateness of an award of attorneys' fees.   In *Johnson,* the Fifth Circuit Court of Appeals delineated twelve factors to be considered in deciding whether the lodestar should be adjusted. *Id.,* at 718. See also, *Watkins v. Fordice,* 7 F.3d 453, 459 (5th Cir.1993); *Alexander v. City of Jackson Miss.*, 456 F. App'x 397, 399 (5th Cir. 2011).

This court will first undertake to make the lodestar calculation, and will then, using the factors set out in *Johnson*, evaluate the necessity of an upward or downward adjustment of that figure.

### 1. *Lodestar Calculation*

As previously stated, to calculate the lodestar, the court should first identify the number of hours reasonably expended on the litigation and multiply that by a reasonable hourly rate. The party seeking attorney's fees bears the burden of proving the reasonableness of the number of hours claimed and the reasonableness of the hourly rate requested.   *Lipscomb v. Columbus Municipal Separate School District,* 261 F. Supp.2d 626, 630-31 (N.D. Miss. 2003).   The party seeking attorneys' fees also has the duty to submit "adequately documented time records to the court." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993).

A court must then determine the reasonable hours expended by "weighing the hours claimed against [the judge's] own knowledge, experience, and expertise of the time required to

complete such activities." *McClain v. Lufkin Indus. Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). Further, the court should reduce the hours claimed to eliminate "all time that is excessive, duplicative or inadequately documented." *Id.*

Benham asserts the hours he has claimed and the hourly rates his attorneys charged are reasonable and consistent with other cases in this region. Benham, in support of his position, submitted a detailed billing statement [Docket no. 54-3], verified by counsel who did the work [Docket nos. 54-1 and 54-2]. Benham's position further was substantiated by local counsel familiar with reasonable hourly rates and time expenditures for civil rights actions in the Southern District of Mississippi. [Docket nos. 54-4 and Doc. 54- 5].

Defendants do not oppose, with any specificity, the reasonableness of the *number* of alleged hours (218.8 hours for Attorney Kellum and 33.1 hours for Attorney Mangini), nor do they raise any objection to hourly *rates* sought by Benham ($375 per hour for Attorney Kellum and $200 per hour for Attorney Mangini). Lastly, Defendants do not attack the reasonableness of any of the litigation expenses sought by Plaintiff's motion for attorneys' fees; rather, Defendants argue that Plaintiff is not entitled to any fees whatsoever because this court did not enter a final judgment in Plaintiff's favor. In the alternative, say Defendants, any award of attorneys' fees should be minimal, since this court dismissed Benham's claims in the matter *sub judice.*

### a) Reasonable Hours Expended

Plaintiff has submitted documentation that Plaintiff's two attorneys have expended a total of 251.90 hours to prosecute this litigation, and requests attorneys' fees in the amount of $88,670.00. Of the 251.90 hours, Attorney Nathan W. Kellum ("Attorney Kellum") claims to have expended 218.8 hours and Attorney Mark Anthony Mangini ("Attorney Mangini") claims

to have spent 33.10 hours on legal work for this case. Plaintiff further requests "disbursements" in the amount of $1,257.97, for a total request of $89,927.97.

Both attorneys submitted Affidavits, verifying that the time entries set out in their joint time statement are accurate and reflect time recorded contemporaneously as they did the work. [See Affidavits of Attorney Kellum and Attorney Mangini. [Docket nos. 54-1 and 54-2].  The attorneys attest that they consider, in their professional judgment, every task shown in the time statement as necessary for the prosecution of the case. Attorney Kellum further disavows any unnecessary or duplicative tasks by either him or Attorney Mangini. Benham asserts that in an attempt to avoid duplicative and unnecessary work, only one lawyer attended each hearing in this case, even though Defendants regularly had two or three lawyers present at such appearances. [Docket no. 54-1, ¶ 34). Attorney Kellum alleges he also excised any time entry involving communication between lawyers from the time statement. [Docket no. 54-1, ¶ 31]. Finally, Attorney Kellum claims he cut a significant number of hours from his and Attorney Mangini's time following the exercise of billing judgment. [Docket no. 54-1. ¶¶ 35-39).

Benham's submitted Time Sheet also reflects "disbursements", which include filing fees, shipping fees, transcript requests, and travel expenses for Benham in the amount of $1,257.97. This total amount is reached by various "Receipt" amounts for each transaction. [Docket no. 54-3, p. 29].

Billing judgment requires documentation of the hours charged *and* of the hours written off as unproductive, excessive, or redundant." *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 662 (5th Cir. 2002)  (emphasis added).  Parties seeking attorney's fees must show the reasonableness of the hours billed and, therefore, are charged with proving that they exercised billing judgment. *Walker v. City of Mesquite,* 313 F.3d 246, 251 (5th Cir. 2002).  Upon

conducting an independent review of the submitted time entries and corroborating the attorneys' statement, this court finds that Plaintiff acted reasonably and has provided evidence of its attorneys' fees with the specificity required.

This court further finds that although the issues in the lawsuit were not complex or novel to Plaintiff's attorneys, the attorneys were, nonetheless required to analyze the City's specific Ordinances and frame their arguments specifically to the facts of this case.   While other jurisdictions had considered and upheld either a bubble zone, or a buffer zone, or a quiet zone in front of an abortion clinic, no court previously had addressed the combination of all three restrictions in one ordinance like that set out in §86-401, *et. seq*. Also, the challenge to this law implicated competing interests, requiring the Court to draw a balance between the interests of individuals who wish to avoid unwanted noise and contact in public spaces and the interests of individuals who wish to engage in free speech in and around these spaces. The nuanced legal arguments presented in this matter, accordingly, support a grant of attorneys' fees.

This court, however, finds that it must retract any hours expended by Benham's attorneys for work performed in opposing Defendants' Motion to Dismiss this matter as moot. Unlike the facts of *Dearmore*, discussed *supra*, where the lawsuit was expeditiously dismissed by the district court without opposition from the plaintiff, here, Benham opposed the Defendants' motion to dismiss, arguing that the changed circumstance[7] did not preclude this court from granting his requested relief for injunctive relief and nominal damages. Benham contended further that, even if his request for injunctive relief is moot, he still had standing to maintain this suit based solely on his request for nominal damages.

---

[7] The "changed circumstance" refers to repeal of Section 84-401 through 86-409 of the Jackson Code of Ordinances, *An Ordinance of the City of Jackson, Mississippi, Prohibiting Certain Activities Near Health Care Facilities.* The specifics of these ordinances have previously been discussed in detail.

This court, by way of its Order [Docket no. 52], ruled in favor of the Defendants. The court found that although Benham had standing to bring his lawsuit, he could not overcome the mootness issue, which can arise at any point in the litigation. Benham, therefore, was not entitled to any compensatory or nominal damages.

This court, accordingly, has recalculated the lodestar amount by subtracting time entries for both attorneys beginning on November 16, 2020, and ending on December 20, 2021. [Docket nos. 54-3, pp. 16-26]. This court, however, grants Benham's requests fees for all time spent pursuing the subject motion for attorneys' fees. The time entries reflecting such work on its motion begins on December 20, 2021, with the time entry labeled, "Email opposing counsel re: resolution of fees."  Upon concluding its calculations in the aforementioned manner, this court subtracts the amount of $28,950.00 from Benham's proposed lodestar amount of $89,927.97, resulting in the final amount of $60,977.97.

b) <u>Reasonable Hourly Rates</u>

The court next must determine the appropriate hourly rate by "looking to the prevailing market rates in the relevant legal community. *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 284 (5th Cir. 2008); *Missouri v. Jenkins,* 491 U.S. 274;  *Watkins v. Fordice,* 7 F.3d 453, 458-59 (5th Cir. 1993); *City of Riverside v. Rivera,* 477 U.S. 561, 568, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)(citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). To do this the court considers the attorneys' regular rates as well as the prevailing rates of the area. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319 (5th Cir. 1995).   In assessing what is reasonable, the attorneys' ability, competence, experience, and skill are taken into consideration.

Plaintiff's attorneys are requesting an hourly rate of $375 for attorney Attorney Kellum and a rate of $200 for Attorney Mangini.  The Defendants do not oppose these proposed hourly

rates. This court already has reduced the number of hours for each of these attorneys, and must now determine if the remaining hours were billed under the appropriate hourly rates.

The winning party may submit affidavits of local attorneys to support its request for a certain rate.  If the requested rate is within the range established for lawyers with similar skill and experience, yet the court chooses a different rate, the court must articulate its reason for doing so. *Watkins v. Fordice,* 7 F.3d 453, 458-59 (5th Cir. 1993).  In the instant case, Benham has submitted affidavits from two attorneys practicing in the local area: Attorney Scott Newton ("Attorney Newton") and Attorney Stephem M. Crampton ("Attorney Crampton").

 Attorney Newton's Declaration [Docket no. 54-4], asserts that he is an attorney familiar with constitutional claims similar to those in the the matter *sub judice*, and has a great deal of litigation experience in the district. Attorney Newton attests that senior litigators in the Southern District of Mississippi regularly obtain rates of $400 or greater, and that he charges $525 per hour himself. [Docket no. 54-4, ¶ 8]. Attorney Newton claims that Kellum's $375 hourly rate is not only reasonable in this market, but lower than anticipated, given Kellum's experience and expertise in civil rights litigation. [Docket no. 54-4, ¶¶ 9, 12). He also states that, in his professional opinion, Attorney Mangini's $200 hourly rate is also reasonable in this jurisdiction for an attorney with seven (7) years of practice. [Docket no. 54-4, ¶¶ 13, 14].

Attorney Crampton further substantiates the hourly rates of Plaintiff's attorneys. According to Attorney Crampton's Declaration [Docket no. 54-5], he is an experienced lawyer in civil rights litigation in the Southern District and his usual hourly rate for work similar to that performed in this case is $425 per hour. [Docket no. 54-5, ¶¶ 4-7). Attorney Crampton further states that he is familiar with Attorney Kellum and his work, as well as being familiar with Attorney Mangini's previous casework. Attorney Crampton states that, in his professional

opinion, the sought-after hourly rates are reasonable in Jackson, Mississippi and the Southern District of Mississippi. [Docket no. 54-4, ¶¶ 8-9].

This court, relying upon its own vast experience, and upon considering the submitted documents, finds that the proposed hourly rates of $375 for attorney Ashley Kellum and $200 for Attorney Mangini are reasonable for litigation of this type.   The final lodestar calculation, therefore, remains $60, 977.97.

### 2. *The Johnson Factors*

As stated *supra*, the lodestar calculation is presumed to be a reasonable fee, but may be adjusted upward or downward based on evaluation of specific factors. *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir.1993).   Adjustments may be made to the fee award by applying the factors enumerated in *Johnson v .Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). See also *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)(citing *Johnson v. Georgia Highway Express, Inc., supra).*   The twelve factors articulated in the *Johnson* case are:

> (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Giles,* 245 F.3d at 490 n. 29 (citing *Strong v. BellSouth Telecomms., Inc.,* 137 F.3d 844, 850 n. 4 (5th Cir. 1998)).

The Fifth Circuit has stated that the scope of the *Johnson* factors is narrowed because "the trial court must be careful not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir. 1993).   The *Shipes* court further expounded, "[f]our of the factors – the novelty and complexity of the issues, the special skill and experience of counsel, the quality

of representation, and the results obtained from the litigation – are presumably fully reflected in the lodestar amount." *Id.*

This court additionally is persuaded that the present lodestar calculation accurately reflects, and takes account of: whether the fee is fixed or contingent; the customary fee for similar work in the community; and the experience, reputation, and ability of the attorneys. This court must then separately address the remaining *Johnson* factors: the time and labor required; the nature and professional relationship with the client; awards in similar cases; the preclusion of other employment; time limitations imposed by the client or the circumstances; and the undesirability of the case.

The **first factor,** time and labor required, has already been considered in calculating the lodestar. This factor calls for the trial judge to weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. *Johnson*, 488 F.2d at 717. This court has tried many §1983 cases, including many with attorneys' fee awards, and the court is quite familiar with the amount of time generally required. As earlier noted, this court is of the opinion that the amount of time claimed, *in toto*, is excessive because this court ruled in the Defendants' favor regarding the Motion to Dismiss. This court already has reduced the fee amount; thus, no further adjustment is called for based on this *Johnson* factor.

In making its lodestar determination, this court also previously has considered the **second factor**, novelty and difficulty of the questions involved, and the **third factor**, the skill required to perform the legal service properly. Accordingly, no adjustment to the lodestar is necessary due to the second or third factors.

An adjustment to the lodestar is not necessary based on the **fourth factor.**  The record does not establish that Plaintiff's attorneys were precluded from taking on other cases due to this litigation, to any greater degree than any ordinary case.

The **fifth factor,** the customary fee, has also been considered by this court in making its lodestar assessment.  The Affidavits submitted by Plaintiff's attorneys assert that although they do not charge their clients for their legal services, they do place "an objective value on [their] services on an annual basis." [Docket no. 54, p. 9]. According to their submission to this court, Attorney Kellum's internal hourly rate has been $520 per hour since January, 2020.  Attorney Mangini's internal hourly rate for the calendar year 2021 was $290.00 per hour. This court notes that based on its review of submissions, Plaintiff's proposed rates are lower than the stated internal rates. This factor, therefore, does not dictate an adjustment to the lodestar.

The **sixth factor** is whether the fee is fixed or contingent.  This factor does not weigh in favor of an adjustment upward or downward.

 In reviewing the **seventh factor,** time limitations imposed by the client or the circumstances, the court is unaware of any special time limitations imposed by this client or this case.  This factor has no bearing on the fee amount.

The **eighth factor** requires this court to review the amount involved and the results obtained.  Plaintiff's lawyers obtained victory on the preliminary injuction.  Plaintiff did not achieve complete success, however.  He did not prevail on the Defendants' Motion to Dismiss. This court granted defendant's motion and dismissed Plaintiff's Complaint as moot. The lodestar is presumed to be the appropriate amount, and this court is not persuaded that the level of success requires an adjustment up or down.

The **ninth factor** requires this court to consider the experience, reputation, and ability of the attorneys.   This too, was considered in making the lodestar calculation.  See *Walker v. United States Dept. of Housing and Urban Dev.*, 99 F.3d 761,771 (5th Cir. 1996) and *Blum v. Stenson*, 465 U.S. 886, 899 (1984).

The record also does not support an adjustment due to the **tenth factor,** the undesirability of the case.   There does not appear to be anything about this case that would make it more undesirable than any other, especially in light of Plaintiffs' attorneys' regular work in this area of the law.

 The **eleventh factor** is the nature and length of the client relationship.  This court is unaware of anything surrounding the attorney-client relationship in this case that would indicate that an adjustment should be made to the lodestar amount.

The **twelfth factor**, and the last of the *Johnson* factors, requires this court to consider awards in similar cases.   Based on this court's knowledge, experience and expertise, this amount is consistent with fee awards made in similar cases, after the reductions that were made previously.  Considering the success obtained however, and the fact that this matter was not tried to a conclusion, this court is of the opinion that this award amount is reasonable and appropriate, and that no additional adjustment is necessary.

Having thoroughly analyzed the *Johnson* factors, this court concludes that adjustment to the lodestar amount is not warranted, and will not be made. The attorneys' fee amount awarded to the Plaintiff, Philip Benham, and payable by the Defendants, is **$60,977.97**.   This court recognizes that the reduction ($28,950.00) from the amount sought ($89,927.97) is significant.

### IV.     CONCLUSION

Having established that Benham is a prevailing party under the preliminary injunction, this court finds that he is entitled to attorneys' fees and costs under §1988(b).

This court is convinced, however, for the reasons stated herein, that the Defendants' lodestar must be reduced to $60, 977.97, without further reduction after applying the *Johnson* factors.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiff Philip Benham's, *Motion for Attorney's Fees and Litigation Costs* **[Docket no. 54]** hereby is **GRANTED**, with a reduction, and that Plaintiff Philip Benham is entitled to attorneys' fees and expenses in the amount of **$60,977.97**.

**SO ORDERED AND ADJUDGED this the 5th day of June, 2022.**

**/s/HENRY T. WINGATE**　　　　　　　　
UNITED STATES DISTRICT COURT JUDGE